M. Jonathan Hayes (Bar No. 90388)
Matthew D. Resnik (Bar No. 182562)
Roksana D. Moradi-Brovia (Bar No. 266572)
**RESNIK HAYES MORADI LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
**Telephone:** (818) 285-0100
**Facsimile:** (818) 855-7013
jhayes@rhmfirm.com
matt@rhmfirm.com
roksana@rhmfirm.com

*Attorneys for Debtor*
Jong Uk Byun

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:18-bk-19004-VZ |
| | |
| | Chapter 11 |
| JONG UK BYUN, | |
| | **NOTICE OF MOTION AND MOTION BY DEBTOR TO APPROVE THE SALE OF CERTAIN REAL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS AND ENCUMBRANCES; DECLARATIONS OF JONG UK BYUN AND KIRK GARABEDIAN;** |
| Debtor. | |
| | **1736 E. 24th Street Los Angeles, CA 90018 parcel number 5167-015-067** |
| | Date: March 5, 2019 |
| | Time: 11:00 a.m. |
| | Place: Courtroom 1368 |
| | 255 E. Temple Street |
| | Los Angeles, CA 90012 |

TO THE HONORABLE VINCENT ZURZOLO, UNITED STATES

BANKRUPTCY JUDGE; SECURED CREDITORS HYUNDAI STEEL COMPANY,

PACKO INVESTMENTS, INC., THE BAE FAMILY TRUST, SOO YEONG KIM,

MOHAMED SANFAZ, ALLEN PARK, TONI KO, CAP CHANG CHONG, AND

RESNIK
HAYES

**M&A EQUITIES, LLC, AND COUNSEL OF RECORD; AND ALL CREDITORS AND PARTIES IN INTEREST:**

PLEASE TAKE NOTICE that on March 5, 2019, at 11:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1368 of the above-entitled United States Bankruptcy Court located at 255 E. Temple Street, Los Angeles, CA  90012, Jong Uk Byun (hereinafter the "Debtor") in the above-captioned Chapter 11 case, shall, and does hereby, move the Court for an Order granting the following relief (the "Motion"):

1.    Authorizing the sale of certain assets of the estate, including but not limited to real property described herein generally known as 1736 E. 24th Street, Los Angeles, CA 90058, parcel number 5167-015-067 (the "24th Street Property").

2.    Authorizing the sale of the 24th Street Property to C&M Metals, Inc., or its designee (hereinafter, "C&M Metals" or "Buyer"), for a sales price of $5,500,000.  The 24th Street Property includes certain fixtures and real property improvements owned by the Debtor's wholly owned entity, Central Metal, Inc.  The sale of the real property and other assets (collectively the "24th Street Property Assets") will be on the terms and conditions set forth in the Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate executed by the Debtor and Buyer (the "PSA"), a copy of which is attached hereto as **Exhibit "A."**

3.    Authorizing the sale of the 24th Street Property Assets to such other entity as the court, at the hearing on the Motion, or at any continued hearing, finds has made a higher or better offer than that of Buyer.

4.    Approving the overbid procedures set forth in the Motion, to the extent that the procedures have not already been approved by the Court.

5.    Authorizing the sale of the 24th Street Property Assets free and clear of all liens, claims, encumbrances, and other interests of all persons.

6.    Finding that notice to creditors and parties in interest relating to the Motion was adequate.

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

RESNIK
HAYES

7.   Finding that the Debtor and Buyer acted in good faith in connection with the negotiation, execution, delivery, and consummation of the sale of the 24th Street Property Assets.

8.   Finding that such negotiations and transactions were conducted at arms-length such that the Buyer is entitled to the protections afforded by 11 U.S.C. §363(m) with respect to all transactions contemplated by the Agreement.

9.   Authorizing the Debtor and/or the other parties to the sale to take such actions as are necessary and appropriate to consummate the sale and conveyance of the 24th Street Property Assets.

The Debtor believes that the proceeds of the sale will not be sufficient to pay all secured creditors with liens attached to the 24th Street Property Assets.  The Debtor is informed and believes that the lienholders will agree to release their respective liens on the 24th Street Property Assets.  This is because the junior lienholders also have liens on other real property that adequately protects their interests.

The sale is expected to close within 15 days after the Order Approving the Sale is entered.

This Motion is based upon the Notice of Motion; 11 U.S.C. §363 and 105; Federal Rules of Bankruptcy Procedure 2002 and 6004; the attached Memorandum of Points and Authorities; the Declaration submitted herewith; and such additional evidence and argument as may be presented at or before the hearing on this Motion.

PLEASE TAKE FURTHER NOTICE that pursuant to *Local Bankruptcy Rule 9013-1*, any party opposing the relief sought by the Application must file a written opposition setting forth the facts and law upon which the opposition is based and must appear at the hearing on the Application.  Any factual allegations set forth in such written response must be supported by competent and admissible evidence.  Any response or opposition to the Application must be filed with the Court and served on the Debtor's

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

RESNIK
HAYES

Counsel at least fourteen (14) days prior to the scheduled hearing date on the Application (not excluding Saturdays, Sundays or legal holidays).  Such responses, if any, must be served on the Debtor's Counsel at the address noted in upper left-hand corner of the first page of this notice.  Pursuant to *Local Bankruptcy Rule 9013-1*, any response not timely filed and served may be deemed by the Court to be consent to the granting of the relief requested by the Motion.

WHEREFORE, the Debtor respectfully requests that the Court enter its Order authorizing it to sell the 24th Street Property Assets as described in the Motion and the exhibits thereto, and granting such other and further relief as is just and proper under the circumstances.

Dated:  February 6, 2019

**RESNIK HAYES MORADI LLP**

By:     **/s/ M. Jonathan Hayes**
    **M. Jonathan Hayes**
    **Matthew D. Resnik**
    **Roksana D. Moradi-Brovia**
    *Attorneys for Debtor*
    Jong Uk Byun

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

# Contents

I.      INTRODUCTION ............................................................................ 6

II.     FACTS AND PROCEDURAL HISTORY .................................................. 6

    A.      The Chapter 11 Filing ........................................................... 6

    B.      The Debtor's Business Operations........................................... 6

    C.      The Debtor's Real Property and Liens Thereon ......................... 7

III.    SUMMARY OF THE SALE AND PROPOSED PROCEDURES ........................ 8

    A.      The Property to be Sold ......................................................... 8

    B.      The Proposed Sale ................................................................ 8

    C.      Marketing Efforts for the Property.......................................... 10

    D.      Liens Against the 24th Street Property Assets........................... 12

    E.      Reasons Justifying Proposed Sale............................................ 12

    F.      The Buyer is Entitled to the Benefits and Protections of 11 U.S.C. Section 363(m). 13

IV.     OVERBID PROCEDURES .................................................................. 13

V.      ARGUMENT................................................................................... 14

VI.     CONCLUSION ............................................................................... 16

DECLARATION OF JONG UK BYUN ........................................................ 17

**MOTION TO APPROVE SALE**
**OF REAL PROPERTY**

RESNIK
HAYES

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3
4
5
6

Jong Uk Byun ("the Debtor"), Debtor herein owns several pieces of real property in the greater Southern California area.  He also operates a metal recycling business through a wholly owned entity, Central Metal, Inc. (not to be confused with the Buyer, which has no affiliation with the Debtor).  He has no other business operations.

7
8
9

This Motion seeks permission to sell certain real property described more particularly below.  The sale will be free and clear of all liens, claims, encumbrances, and other interests of all persons. The sale will be subject to overbids.

10
11
12
13
14
15
16

The sale will include certain fixtures and real property improvements owned by the Debtor's wholly owned entity, Central Metal, Inc.  To the extent the sale includes fixtures or improvements owned by CMI, these do not constitute estate property.  All property subject to this motion, whether or not designated as real property owned by the Debtor or improvements owned by Central Metal, Inc., is subject to Hyundai's deeds of trust.  All net funds from the sale, irrespective of the owner of the property being sold, will be paid to Hyundai at closing.

17

18

### II.    FACTS AND PROCEDURAL HISTORY

19

#### A.  The Chapter 11 Filing

20
21
22
23

Jong Uk Byun ("the Debtor"), Debtor in-Possession filed his chapter 11 petition on August 3, 2018.  The Debtor is operating his business and managing his financial affairs as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.   There is no committee of unsecured creditors.

24

25

#### B.  The Debtor's Business Operations

26
27
28

The Debtor is a single individual, 67 years of age.  He formed Central Metal, Inc. in 1993 and has operated that business ever since.  Central Metal currently conducts its business activities out of four (4) active facilities throughout Southern California – one

**MOTION TO APPROVE SALE**
**OF REAL PROPERTY**

RESNIK
HAYES

facility in the Los Angeles County area, one facility in Hinkley/Barstow, one facility in San Bernardino, and one facility in Bakersfield.  The company operated its business in part on the 24th Street Property.

When the Debtor purchased the property it was vacant land.  The building, the improvements and other developments during the ensuing 24 years of operations were paid for by Central Metal, Inc. and are treated as assets of Central Metal, Inc. on its books and records.

Central Metal's largest customer was, until approximately mid-2016, Hyundai Steel Company, Ltd. ("Hyundai").  From 2007 through mid-2016, Central Metal sold Hyundai more than $180 million in recycled materials.  Hyundai stopped buying product from Central Metal in mid-2016.  Litigation began between the Debtor, Central Metal and Hyundai and continues to this time.

The Debtor filed his emergency petition to stop a foreclosure sale by Hyundai Steel Company that was set on the 24th Street Property as well as certain of the Debtor's other properties for August 6, 2018.

Central Metal will execute transfer documents sufficient to satisfy the Buyer that the Buyer is receiving all right, title and interest to the entire property and everything on it at Closing.  All net funds from the sale irrespective of the owner of the property being sold will be paid to Hyundai at closing.

**C. The Debtor's Real Property and Liens Thereon**

A summary of the Debtor's real properties along with the liens that attach to each is attached hereto as **Exhibit "B."**  As can be seen from the summary, Hyundai is the senior lienholder not only on the 24th Street Property but on three other parcels of real property owned by the Debtor.  The sale of the 24th Street Property will not pay Hyundai or the junior lienholders in full but will pay a significant portion of the debt owed to Hyundai which will result in there being more equity in the remainder of the properties for the Debtor and other creditors.

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

RESNIK
HAYES

## III.    SUMMARY OF THE SALE AND PROPOSED PROCEDURES

### A.  The Property to be Sold

By this Motion, the Debtor proposes to sell his real property located at 1736 E. 24th Street, Los Angeles, CA 90058, parcel number 5167-015-067 (the "24th Street Property"). As stated above, the sale will include any and all interest that may be owned by Central Metal, Inc.  A Power Point presentation prepared by the Debtor's real estate agent, Kirk Garabedian of Keller Williams Commercial is attached hereto as **Exhibit "D."**

The legal description of the 24th Street Property is attached hereto as **Exhibit "C."**

The terms of the PSA shall prevail over the terms of this pleading should there be a discrepancy between the two.

The proceeds of the sale are not sufficient to pay Hyundai Steel Company in full as well as all other creditors who have a lien on the 24th Street Property.  Debtor is advised and is otherwise confident that Hyundai and the junior lienholders will agree to release their liens since the same lienholders all have liens on other real property assets owned by the Debtor.

### B.  The Proposed Sale

As set forth above, subject to court approval and overbid, the Debtor has agreed to sell the 24th Street Property Assets, free and clear of all liens and interests, to Buyer for a sales price of $5,500,000 (the "Purchase Price").

A summary of the terms of the proposed sale is as follows:

1.  Sale of the 24th Street Property Assets to C&M Metals, Inc., or its assignee for $5,500,000.

2.  Buyer will deposit $100,000 into escrow (the "Deposit."). This deposit has been made into the escrow that has been opened with Commerce Escrow #18-80452-DB.  The Buyer will make an additional deposit of $450,500 at Closing.

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

RESNIK
HAYES

3. The sale is subject to a financing contingency as follows: The Buyer will obtain a new loan against the 24th Street Property in the amount of 90% of the Purchase Price. Buyer has 45 days from the date of the PSA or December 28, 2018 to obtain the loan commitment. The last day to obtain the loan commitment is therefore February 11, 2019. On or about January 28, 2019, the Buyer requested that financing contingency and certain other contingencies be extended to February 20, 2019 and the Debtor agreed. The letter request is attached hereto as **Exhibit "E."**

4. Closing is expected to take place within 15 days after entry of an Order of the Bankruptcy Court Approving the Sale.

5. The sale shall be free and clear of all liens, claims, encumbrances, and other interests (including any and all interests in the 24th Street Property Assets within the meaning of the Bankruptcy Code Section 363(f)).

6. The sale is subject to overbids at the hearing.

7. As part of the sale, the Debtor will pay a fee of 4% of the Purchase Price as follows: one-half to his real estate agent Kirk Garabedian, of Keller Williams Commercial and one-half to Magnum Properties. If a person or entity other than the Buyer herein is the successful bidder, and that person has a real estate agent, the 4% commission shall be split between Mr. Garbedian and the Buyer's agent.

8. The sale is "as is," "where is" and is without any other representation, warranty or assurance, made by the Debtor or any of its agents, attorneys or other representatives, concerning the value of the assets, except as such representations, warranties or assurances are set forth in the PSA and except that the Debtor has warranted that the assets transferred by him can be rightfully transferred by him and are equal in value to the purchase price to be received by the Debtor.

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

RESNIK
HAYES

As part of the sale, Debtor is required to provide an Order of the Bankruptcy Court approving the PSA, which must provide, in addition, that:

1.  the Debtor is authorized to sell the business and convey the 24th Street Property Assets to Buyer pursuant to this Agreement and 11 U.S.C. §363, free and clear of all liens, claims, encumbrances, and other interests (including any and all interests in the 24th Street Property Assets within the meaning of the Bankruptcy Code Section 363(f)).

2.  the Buyer is deemed a good faith purchaser of the Property in accordance with the provisions of 11 U.S.C. §363(m),

3.  notwithstanding the provisions of Federal Rule of Bankruptcy Procedure 6004(g) with respect to the sale of assets, and Federal Rule of Bankruptcy Procedure 6006(d) with respect to any executory contract or unexpired lease assumed and assigned with such sale of the Property, the proposed Order shall be effective immediately after its entry (the "**Sale Order**").

4.  Buyer and his employees, officers, directors, stockholders, agents, or attorneys shall not assume any liability or responsibility for any claims, debts, accounts payable, liens or encumbrances.

5.  any claims, liens, interests or encumbrances against the Debtor, if not paid out of escrow at Closing shall attach to the proceeds of the sale, according to their respective priorities.

The Debtor will turn over possession of the 24th Street Property Assets described herein to Buyer upon the Closing.  The Property shall be vacant at that time.

## C. Marketing Efforts for the Property

The Debtor had actively marketed the 24th Street Property Assets prior to the bankruptcy filing.  The Debtor had previously retained, Kirk Garabedian of Keller Williams Commercial, a real estate broker who specialized in selling commercial real

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

RESNIK
HAYES

property in the greater Los Angeles area.  Mr. Garabedian's employment was approved by Order of the Court entered on October 31, 2018 [Docket No. 46].

SUMMARY OF ON-MARKET ACTIVITY (From September 18, 2018 to January 31, 2019)

➢ On September 7, Mr. Byun signed the EXCLUSIVE LISTING AGREEMENT, which set the listing price to $7,775,000 (Approximately $150/SF).

➢ This was followed by a vigorous marketing campaign which includes the following:

o A thorough OFFERING MEMORANDUM.

o Property listed on LOOPNET.COM (Premium Listing)

▪ Exposure to over 113,774 users during that period, with unique "Impression" Views online.

▪ "Listing Detail Page" Views of 784 through that same period.

Additional Marketing Website

1. LOOPNET - https://www.loopnet.com/Listing/1736-E-24th-St-Vernon-CA/13817816/

2. CREXI.COM - https://www.crexi.com/properties/178002

3. LEVITT DIGITAL – https://www.ldcre.com/asset-detail.php?id=111935

4. ROFO.COM – https://www.rofo.com/listings/CA/Los-Angeles/1736-East-24th-Street-1635051.html

5. 42FLOORS.COM - https://42floors.com/us/ca/los-angeles/1736-e-24th-st

6. HARKET CRE - http://harkencre.com/listings#2707

7. REAL CONNEX - https://realconnex.com/projects/112205-industrial-land-1736-e-24th-street-los-angeles-bankruptcy-sale

8. BROKER LIST - https://thebrokerlist.com/have/industrial-land-1736-e-24th-street-los-angeles-bankruptcy-sale-67157

9. OFFICE SPACE - https://www.officespace.com/ca/vernon/2044189-1736-e-24th-st

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

RESNIK
HAYES

10. BREVITAS - https://brevitas.com/p/eOQpinS/industrial-land-1736-e-24th-street-los-angeles-bankruptcy-sale

11. QUANTUM LISTING - https://quantumlisting.com/listings/industrial-land-1736-e-24th-street-los-angeles-bankruptcy-sale

The current Buyer is C&M Metals, Inc who is a competitor of Central Metal, Inc.  It is located across the street from the Santa Fe Property and needs more space.  C&M Metals has been in business for over 50-years and is well established in the area and community.

### D.  Liens Against the 24th Street Property Assets

There are unpaid property taxes in the amount of approximately $93,000.  These taxes will be paid in full out of escrow.

The first deed of trust holder is Hyundai Steel First Credit Bank which is owed approximately $16.8 million according to the Debtor and $22 million plus according to Hyundai.  The Debtor will pay Hyundai, the full proceeds of this sale less the usual costs of sale and the brokerage commission of 4%.  The sale of the 24th Street Property assets will not affect the liens of Hyundai on the Debtor's other properties until Hyundai is paid in full.

The junior lienholders will not be paid from the sales proceeds herein.  They will however retain their liens on other assets of the Debtor.  The Debtor is informed and believes that the junior lienholders will reconvey their liens in order to facilitate this sale since they too have liens on other properties owned by the Debtor.

### E.  Reasons Justifying Proposed Sale

The Debtor has decided to sell this property as part of his overall goal to pay off Hyundai and the junior lienholders.  This will increase his equity in his other properties.

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

RESNIK
HAYES

**F. The Buyer is Entitled to the Benefits and Protections of 11 U.S.C. Section 363(m).**

The Buyer is not related or affiliated in any way with the Debtor or any insider, affiliates, agents, officers, directors or relatives of the Debtor.  The Buyer and the Debtor have had no previous business or personal dealings with each other in any respect.  In fact, the Buyer became interested in purchasing the 24th Street Property Assets through the marketing efforts of the Debtor's agent Kirk Garabedian.  There are no agreements, formal or otherwise, to work together in the future.

The agreement with the Buyer is therefore at "arms-length."  The agreement was negotiated on behalf of the Debtor by Kirk Garabedian and representatives of the Buyer and constitutes an arms-length transaction.

Moreover, the Debtor submits that the transaction is objectively fair and reasonable. Based thereon, the Buyer, or a successful overbidder, should be provided with the benefits and protections afforded by § 363(m) of the Bankruptcy Code.

## IV.   OVERBID PROCEDURES

The Debtor intends to file and serve a "bidding procedures motion" and set it for hearing on regular notice.  The Debtor hereby proposes to allow any other person or entity to overbid this sale at the hearing set forth herein.  Proposed bidding procedures are as follows:

1)  On or before, February 27, 2019, a prospective bidder must provide to the Debtor's counsel a cashier's check for $500,000 as a deposit (the "Deposit") to be held by Debtor's counsel as set forth herein.  If the prospective bidder is the successful bidder, the Deposit shall become non-refundable.  At Closing, the Deposit will applied to the Purchase Price.  In lieu of this requirement, the prospective bidder may transfer by wire transfer that sum to the Client Trust Account of Resnik Hayes Moradi LLP.

2)  The Prospective Bidder shall also provide to Debtor's counsel and to counsel for the Buyer, Hyundai and Packo, on or before February 27, 2019, proof of its ability to close on the same terms as the PSA.

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

RESNIK
HAYES

3)  As all of the contingencies set forth in the PSA will have been met by the time of the hearing on this motion, any overbid for the 24th Street Property Assets shall be on the same terms and conditions, or better, as is set forth in the Purchase and Sale Agreement set forth in **Exhibit "A."**

4)  There shall be no Contingency Period for any successful overbidder.  The overbidder must close the sale within 15 days after the Court enters its Order Approving the Sale.

5)  The initial overbid must be at least $100,000 more than the Purchase Price herein or $5,600,000.  After the initial overbid, additional overbids shall be in increments of $100,000 each.

## V.    ARGUMENT

A.      Section 363(b)(1) permits the sale of property out of the ordinary course of business

1.      The standard for approval

Section 363(b)(1) of the Bankruptcy Code permits the Debtor-in-possession, after notice and a hearing, to "sell . . . other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  The standards for approval of a pre-confirmation sale pursuant to § 363(b)(1) require that the sale proponent establish that:  (1) a "sound business purpose justifies the sale"; (2) "accurate and reasonable notice of the sale was provided"; (3) "the price to be paid is adequate, i.e., fair and reasonable"; and (4) "good faith i.e., the absence of any lucrative deals with insiders is present." In re Industrial Valley Refrig. and Air Cond. Supplies, Inc., 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987).

Because the proposed sale meets all the requirements, as set forth below, the court should approve the sale.

a.      There is a sound business purpose.

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

RESNIK
HAYES

In this matter, there is a sound business reason for the sale, namely, the *equity* in the 24th Street Property Assets is being diminished every day by the accrual of unpaid interest owed to the secured creditors.  This delay results in the deterioration of the estate.

Because the sale of the property is in the best interest of the estate, and will result in payments in full of all allowed claims, there is a sound business purpose for the sale and the court should therefore approve the sale.  The Bankruptcy Appellate Panel of the Ninth Circuit has adopted a flexible, case by case test to determine whether the business purpose for the proposed sale justifies disposition of property of the estate under § 363(b).  *Walter v. Sunwest Bank (In re Walter),* 83 B.R. 14, 19 (9th Cir. BAP 1988).  In *Walter*, the court set forth the following articulation of the standard to be applied under § 363(b):

Whether the proffered business justification is sufficient depends on the case.  As the Second Circuit held in <u>Lionel (cite)</u>, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the Debtor, creditors and equity holders, alike.  He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole [and] . . . the proceeds to be obtained . . . .  This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*Walter,* 83 B.R. at 19-20.

b.      Accurate and reasonable notice.

Notice of this Motion will be served on all creditors and parties in interest with an opportunity to object.  Thus the creditors are being given accurate and reasonable notice.

c.      A fair and reasonable price will be paid.

While the Debtor is disappointed with the price being paid, the price is fair and reasonable under the circumstances.

d.      The requirement of good faith has been satisfied.

The good faith requirement "focuses principally on the element of special treatment of the Debtor's insiders in the sale transaction." *In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).  The Buyer is not related to or

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

affiliated with the Debtor or any of his entities or other insiders.  There are no anticipated

continuing or new relationships between the parties or any of their affiliates.  Therefore

there is no special treatment of the Debtor's insiders.

     e.  Section 363(f) of the Bankruptcy Code Permits the Sale of Property Free and

Clear of Liens.

     The power of the bankruptcy court to authorize sales of estate property free and

clear of liens has long been recognized.  See, *Van Huffel v. Harkelrode*, 284 U.S. 225, 52

S. Ct. 115 (1931).

     Section 363(f) provides that the trustee may sell property free and clear of any such

interest in such property of an entity other than the estate, if any one of the five

requirements of Section 363(f) are met.   Here the sales price exceeds the liens on the

Property.

## VI.   <u>CONCLUSION</u>

     By reason of the arguments set forth above, the Debtor believes that the sale of the

24th Street Property Assets on the terms described herein is in the best interest of the estate

and the creditors.

     Accordingly, the Debtor's Motion to sell the property should be granted.

Dated:  February 6, 2019           **RESNIK HAYES MORADI LLP**

        **By:**       **/s/ M. Jonathan Hayes**

            **M. Jonathan Hayes**
            **Matthew D. Resnik**
            **Roksana D. Moradi-Brovia**
            *Attorneys for Debtor*
            Jong Uk Byun

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

## DECLARATION OF JONG UK BYUN

I, Jong Uk Byun, declare as follows:

1.      I am the Debtor (the "Debtor") in this Chapter 11 case.   I am over the age of eighteen (18). I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2.      I filed my chapter 11 petition on August 3, 2018.  I am single and 67 years of age.  I formed Central Metal, Inc. in 1993 and have operated that business ever since. Central Metal currently conducts its business activities out of four (4) active facilities throughout Southern California – one facility in the Los Angeles County area, one facility in Hinkley/Barstow, one facility in San Bernardino, and one facility in Bakersfield.  The company operated its business in part on the 24th Street Property.

3.      When I purchased the property it was vacant land.  The building, the improvements and other developments during the ensuing 24 years of operations were paid for by Central Metal, Inc. and are treated as assets of Central Metal, Inc. on its books and records.

4.      Our largest customer was, until approximately mid-2016, Hyundai Steel Company, Ltd. ("Hyundai").  From 2007 through mid-2016, Central Metal sold Hyundai more than $180 million in recycled materials.  Hyundai stopped buying product from Central Metal in mid-2016.  Litigation began between myself, Central Metal and Hyundai and continues to this time.

5.      I filed my emergency petition to stop a foreclosure sale by Hyundai Steel Company that was set on the 24th Street Property as well as certain of my other properties for August 6, 2018.

6.      Central Metal will execute transfer documents sufficient to satisfy the Buyer that the Buyer is receiving all right, title and interest to the entire property and everything

**MOTION TO APPROVE SALE**
**OF REAL PROPERTY**

RESNIK
HAYES

on it at Closing.  All net funds from the sale irrespective of the owner of the property being sold will be paid to Hyundai at closing.

7.    A true and correct copy of the in the Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate executed by myself and the Buyer (the "PSA") is attached hereto as **Exhibit "A."**

8.    I have reviewed the summary of my real properties along with the liens that attach to each is attached hereto as **Exhibit "B"** and believe that it is substantially accurate.

9.    I have decided to sell this property as part of my overall goal to pay off Hyundai and the junior lienholders.  The Buyer is not related or affiliated in any way with me or any insider, affiliates, agents, officers, directors or relatives of mine.  The Buyer and I have had no previous business or personal dealings with each other in any respect.  In fact, the Buyer became interested in purchasing the 24th Street Property Assets through the marketing efforts of the Debtor's agent Kirk Garabedian.  There are no agreements, formal or otherwise, to work together in the future.

10.    I believe that the transaction is objectively fair and reasonable.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed February 3, 2019, at Los Angeles, California.


By:   **SEE NEXT PAGE**
                    **Jong Uk Byun**
                    *Declarant*

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

**18**

RESNIK
HAYES

on it at Closing.  All net funds from the sale irrespective of the owner of the property being sold will be paid to Hyundai at closing.

7.   A true and correct copy of the in the Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate executed by myself and the Buyer (the "PSA") is attached hereto as **Exhibit "A."**

8.   I have reviewed the summary of my real properties along with the liens that attach to each is attached hereto as **Exhibit "B"** and believe that it is substantially accurate.

9.   I have decided to sell this property as part of my overall goal to pay off Hyundai and the junior lienholders.  The Buyer is not related or affiliated in any way with me or any insider, affiliates, agents, officers, directors or relatives of mine.  The Buyer and I have had no previous business or personal dealings with each other in any respect.  In fact, the Buyer became interested in purchasing the 24th Street Property Assets through the marketing efforts of the Debtor's agent Kirk Garabedian.  There are no agreements, formal or otherwise, to work together in the future.

10.  I believe that the transaction is objectively fair and reasonable.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed February 3, 2019, at Los Angeles, California.


By: _____

**Jong Uk Byun**
*Declarant*

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

1

## DECLARATION OF KIRK GARABEDIAN

2

3        I, Kirk Garabedian, declare as follows:

4        1.        I am licensed real estate broker under the laws of the state of California.  I

5   am the listing agent for the Debtor of the real property located at 1736 E. 24th Street, Los

6   Angeles, CA 90058, parcel number 5167-015-067 (the "24th Street Property").   I am

7   employed by Keller Williams Commercial.  I have specialized in selling commercial real

8   property in the greater southern California area since 2005.  I am over the age of eighteen

9   (18). I have personal knowledge of the facts set forth herein, and if called as a witness, I

10  could and would testify competently with respect thereto. Where facts are alleged upon

11  information and belief, I believe them to be true.

12       2.        The Buyer herein became interested in purchasing the 24th Street Property

13  Assets through our marketing efforts.  The Buyer's broker Mr. Mike Meraz of Magnum

14  Properties contacted me initially and I have handled the negotiations between the Debtor

15  and C&M Metals, Inc. since that time.   I am advised and believe that the Buyer, C&M

16  Metals, Inc, is a competitor of the Debtor's business, Central Metal, Inc.  It is located

17  across the street from the 24th Street Property and needs more space.  I am advised that

18  C&M Metals has been in business for over 50-years and is well established in the area and

19  community.

20       3.        I have actively marketed the 24th Street Property Assets for the debtor since

21  at least early 2018.    On September 7, 2018, Mr. Byun signed the EXCLUSIVE LISTING

22  AGREEMENT, which set the listing price to $7,775,000 (Approximately $150/SF).

23       4.        From September 18, 2018 to January 31, 2019, we have completed the

24  following On-Market Activity.

25       5.        o A thorough OFFERING MEMORANDUM, a true and correct copy is

26  attached hereto as **Exhibit "D."**

27       6.        o Property listed on LOOPNET.COM (Premium Listing)

28       7.        ▪ Exposure to over 113,774 users during that period, with unique

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

RESNIK
HAYES

"Impression" Views online.

      8.    • "Listing Detail Page" Views of 784 through that same period.

      9.    Additional Marketing Website

      10.    LOOPNET - https://www.loopnet.com/Listing/1736-E-24th-St-Vernon-CA/13817816/

      11.    CREXI.COM - https://www.crexi.com/properties/178002

      12.    LEVITT DIGITAL – https://www.ldcre.com/asset-detail.php?id=111935

      13.    ROFO.COM – https://www.rofo.com/listings/CA/Los-Angeles/1736-East-24th-Street-1635051.html

      14.    42FLOORS.COM - https://42floors.com/us/ca/los-angeles/1736-e-24th-st

      15.    HARKET CRE - http://harkencre.com/listings#2707

      16.    REAL CONNEX - https://realconnex.com/projects/112205-industrial-land-1736-e-24th-street-los-angeles-bankruptcy-sale

      17.    BROKER LIST - https://thebrokerlist.com/have/industrial-land-1736-e-24th-street-los-angeles-bankruptcy-sale-67157

      18.    OFFICE SPACE - https://www.officespace.com/ca/vernon/2044189-1736-e-24th-st

      19.    BREVITAS - https://brevitas.com/p/eOQpinS/industrial-land-1736-e-24th-street-los-angeles-bankruptcy-sale

      20.    QUANTUM LISTING - https://quantumlisting.com/listings/industrial-land-1736-e-24th-street-los-angeles-bankruptcy-sale

      21.    I believe that the transaction is objectively fair and reasonable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed February 3, 2019, at Los Angeles, California.

By:  <u>**SEE NEXT PAGE**</u>
          **Kirk Garabedian**
          *Declarant*

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

RESNIK
HAYES

"Impression" Views online.

8.    ▪ "Listing Detail Page" Views of 784 through that same period.

9.    Additional Marketing Website

10.   LOOPNET - https://www.loopnet.com/Listing/1736-E-24th-St-Vernon-CA/13817816/

11.   CREXI.COM - https://www.crexi.com/properties/178002

12.   LEVITT DIGITAL – https://www.ldcre.com/asset-detail.php?id=111935

13.   ROFO.COM – https://www.rofo.com/listings/CA/Los-Angeles/1736-East-24th-Street-1635051.html

14.   42FLOORS.COM - https://42floors.com/us/ca/los-angeles/1736-e-24th-st

15.   HARKET CRE - http://harkencre.com/listings#2707

16.   REAL CONNEX - https://realconnex.com/projects/112205-industrial-land-1736-e-24th-street-los-angeles-bankruptcy-sale

17.   BROKER LIST - https://thebrokerlist.com/have/industrial-land-1736-e-24th-street-los-angeles-bankruptcy-sale-67157

18.   OFFICE SPACE - https://www.officespace.com/ca/vernon/2044189-1736-e-24th-st

19.   BREVITAS - https://brevitas.com/p/eOQpinS/industrial-land-1736-e-24th-street-los-angeles-bankruptcy-sale

20.   QUANTUM LISTING - https://quantumlisting.com/listings/industrial-land-1736-e-24th-street-los-angeles-bankruptcy-sale

21.   I believe that the transaction is objectively fair and reasonable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed February 3, 2019, at Los Angeles, California.

By: _____

_____
                    **Kirk Garabedian**
                    *Declarant*

**MOTION TO APPROVE SALE
OF REAL PROPERTY**

20

**EXHIBIT A**



## COUNTER OFFER – SELLER

**Dated:** December 13, 2018

**By and Between**

**Seller:** Jong Uk Byun and Central Metal, Inc.

**Buyer:** C&M Metals, Inc. or Assignee

**Property Address:** 1736 E 24th Street, Los Angeles, CA 90058
(street address, city, state, zip)

**APN:** 5167-015-067

This is a Counter Offer to the "Standard Offer and Agreement for Purchase of Real Estate" dated ___September 28, 2018___ , regarding the above-referenced Property and Parties (hereinafter the "Offer"). A full and complete copy of the Offer is attached hereto and incorporated herein by reference.

1.  Seller hereby accepts the Offer provided the Buyer agrees to the following changes in the Offer:

    (Please check the appropriate box or boxes)

    [✓] Initialed pen and ink changes have been made to the Offer.

    [ ] Seller shall be deemed to have initialed paragraph 21 regarding liquidated damages and paragraph 22 regarding arbitration of disputes

    [ ] The changes are detailed in the addendum attached hereto consisting of paragraphs _____ through _____ .

    [✓] The changes are set forth below.

1. The AIR CRE Standard Offer Agreement dated September 28, 2018 shall be reinstated and the expiration of offer shall be extended to December 20, 2018.

2. This sale is Subject to Bankruptcy Court approval.  Such approval will require overbids.

3. Seller to be "Jong Uk Byun and Central Metal, Inc"

4. Jong Uk Byun and Central Metals, Inc. will transfer any and all interests in the property at the closing.  The sales price will be allocated between land (Mr. Jong Uk Byun) and fixtures, equipment, improvements, ~~goodwill~~, any permits/entitlements to be included (Central Metals, Inc.) at an allocation value to be determined by the Seller.

NOTE: PARAGRAPHS IN THE OFFER WHICH REQUIRE INITIALS BY ALL PARTIES, BUT ARE NOT INITIALED BY ALL PARTIES, ARE EXCLUDED FROM THE FINAL AGREEMENT UNLESS SPECIFICALLY REFERENCED FOR INCLUSION IN THIS COUNTER OFFER.

2.  **REMAINING TERMS:** All of the terms and conditions contained in the Offer which have not been specifically modified or deleted by this Counter Offer are hereby approved by Seller.

3.  [ ] (Seller's initials: ___***_____ ) (if checked and initialed) MULTIPLE COUNTER OFFER: Concurrently herewith, Seller is also making a Counter Offer to another prospective buyer on terms which may or may not be the same as in this Counter Offer.  Acceptance of this Counter Offer by Buyer shall not, therefore, be binding unless and until it is subsequently re-signed by Seller in paragraph 11 below.

4.  **RIGHT TO ACCEPT OTHER OFFERS:** Seller reserves the right to continue to offer the Property for sale, and to accept any other offer at any time prior to actual receipt by Seller's authorized agent, ___Kirk Garabedian___ , of a copy of this Counter Offer duly accepted and signed by Buyer and, if applicable, the re-signing of this Counter Offer by Seller as provided in paragraph 3. Seller's acceptance of such a prior offer shall revoke this Counter Offer.

5.  **EXPIRATION:** This Counter Offer shall expire and be revoked, without further notice, at 5:00 pm on ___December 20, 2018___ , unless it is accepted and signed by Buyer and a fully executed copy is actually received by Seller's agent (as specified in paragraph 4) prior to said time.  Upon expiration, Buyer's Deposit, if any, shall be returned.  This Counter Offer may be executed in counterparts.

6.  **TIME:** Time is of the essence.

7.  **BINDING EFFECT:** This Counter Offer, when fully executed by both Buyer and Seller, and delivered and received as specified above, shall be a binding contract. NO REPRESENTATION OR RECOMMENDATION IS MADE BY AIR CRE OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AGREEMENT OR THE TRANSACTION TO WHICH IT RELATES.  THE PARTIES ARE ADVISED TO SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AGREEMENT.

NOTE:
        THIS FORM IS NOT FOR USE IN CONNECTION WITH THE SALE OF RESIDENTIAL PROPERTY.

INITIALS

Page 1 of 3
Last Edited: 12/13/2018 5:38 PM

INITIALS

© 2017 AIR CRE.  All Rights Reserved.

COS-3.00, Revised 01-03-2017

→ Subject to buyers approval of ~~sale~~ allocation.

Dec-28, 2018

2.    IF EITHER PARTY IS A CORPORATION, IT IS RECOMMENDED THAT THIS AGREEMENT BE SIGNED BY TWO OF ITS CORPORATE OFFICERS.

8.    The undersigned Seller agrees to sell the Property on the terms and conditions stated herein.

**SELLER'S BROKER**
Keller Williams Realty

Attn: Kirk Garabedian
Title: Director

Address: 889 Americana Way, Suite 408
Glendale, CA 90210
Phone: 818-588-0072
Fax: 877-770-2114
Email: kirkg@kw.com
Federal ID No.: 01434190
Broker/Agent BRE License #: 01216376

**SELLER**
Jong Uk Byun and Central Metal, Inc.

By: _____
Name Printed: _____
Title: _____
Phone: _____
Fax: _____
Email: _____

By: _____
Name Printed: _____
Title: _____
Phone: _____
Fax: _____
Email: _____

Address: _____
Federal ID No.: _____

9.    **ACCEPTANCE:** Buyer accepts the foregoing Counter Offer and agrees to purchase the Property on the terms and conditions specified, and authorizes Brokers to deliver a signed copy to Seller.

**BUYER'S BROKER**
Magnum Properties

Attn: Mike Meraz
Title: Broker

Address: 2222 E Washington Blvd,
Los Angeles, CA 90021
Phone: 323-585-3000
Fax: 323-585-3335
Email: magnumprop@aol.com
Federal ID No.: _____
Broker/Agent BRE License #: 00884582

**BUYER**
C&M Metals, Inc. or Assignee

By: _____
Name Printed: _____
Title: _____
Phone: _____
Fax: _____
Email: _____

By: _____
Name Printed: _____
Title: _____
Phone: _____
Fax: _____
Email: _____

Address: _____
Federal ID No.: _____

10.    **ACKNOWLEDGMENT OF RECEIPT:** Seller's agent hereby acknowledges that a copy of the Counter Offer executed by Buyer was received on _____ at _____ am/pm.

By: _____
Name Printed: _____

11.    **MULTIPLE COUNTER OFFER SIGNATURE LINE:** (Applicable only if paragraph 3 is checked and initialed.)  By signing below, Seller accepts this Multiple Counter Offer, and creates a binding contract.  (Note to Seller:  Do NOT sign in this paragraph until after Buyer has accepted the Counter Offer by signing in paragraph 9).

**SELLER**
_____

By: _____
Name Printed: _____
Title: _____
Phone: _____

INITIALS

INITIALS

© 2017 AIR CRE.  All Rights Reserved.

COS-3.00, Revised 01-03-2017

Fax: _____
Email: _____

By: _____
Name Printed: _____
Title: _____
Phone: _____
Fax: _____
Email: _____

AIR CRE. 500 North Brand Blvd, Suite 900, Glendale, CA 91203, Tel 213-687-8777, Email contracts@aircre.com
NOTICE:  No part of these works may be reproduced in any form without permission in writing.

LEFT INTENTIONALLY BLANK



INITIALS

© 2017 AIR CRE.  All Rights Reserved.

COS-3.00, Revised 01-03-2017



## STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTIONS
## FOR PURCHASE OF REAL ESTATE
(Vacant Land)

Dated: September 28, 2018

**1. Buyer.**

1.1    C & M Metals, Inc. or Assignee   , ("**Buyer**") hereby offers to purchase the real property, hereinafter described, from the owner thereof ("**Seller**") (collectively, the "**Parties**" or individually, a "**Party**"), through an escrow ("**Escrow**") to close 30 or   15   days after the waiver or expiration of the Buyer's Contingencies, ("**Expected Closing Date**") to be held by   Commerce Escrow, Attention Dwayne Butler   ("**Escrow Holder**") whose address is   1055 Wilshire Blvd., Suite 100, Los Angeles, CA 90017  , Phone No.   213 353-4060  . Facsimile No.   213 484-0415   upon the terms and conditions set forth in this agreement ("**Agreement**"). Buyer shall have the right to assign Buyer's rights hereunder, but any such assignment shall not relieve Buyer of Buyer's obligations herein unless Seller expressly releases Buyer.

1.2    The term "**Date of Agreement**" as used herein shall be the date when by execution and delivery (as defined in paragraph 20.2) of this document or a subsequent counteroffer thereto, Buyer and Seller have reached agreement in writing whereby Seller agrees to sell, and Buyer agrees to purchase, the Property upon terms accepted by both Parties.

**2. Property.**

2.1    The real property ("**Property**") that is the subject of this offer consists of (insert a brief physical description)   approximately 51,662   square feet of M-3 zoned industrial land   is located in the County of   Los Angeles  , is commonly known as (street address, city, state, zip)   1736 E. 24th Street, Los Angeles, CA 90058   and is legally described as:   to be legally described by the Title Company during escrow   (APN:   5167-015-067  .)

2.2    If the legal description of the Property is not complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be completed or corrected to meet the requirements of   Chicago Title Company attention Mike Slinger   ("**Title Company**"), which shall issue the title policy hereinafter described.

2.3    The Property includes, at no additional cost to Buyer, the permanent improvements thereon, including those items which pursuant to applicable law are a part of the property, as well as the following items, if any, owned by Seller and at present located on the Property: _____ (collectively, the "**Improvements**").

2.4    Except as provided in Paragraph 2.3, the Purchase Price does not include Seller's personal property, furniture and furnishings, and _____ all of which shall be removed by Seller prior to Closing.

**3. Purchase Price.**

3.1    The purchase price ("**Purchase Price**") to be paid by Buyer to Seller for the Property shall be ☑   $5,500,000.00  , or ☐ (complete only if purchase price will be determined based on a per unit cost instead of a fixed price) _____ per unit. The unit used to determine the Purchase Price shall be: ☐ lot ☐ acre ☐ square foot ☐ other _____ prorating areas of less than a full unit. The number of units shall be based on a calculation of total area of the Property as certified to the Parties by a licensed surveyor in accordance with paragraph 9.1(g). However, the following rights of way and other areas will be excluded from such calculation: _____ . The Purchase Price shall be payable as follows:

*(Strike any not applicable)*

(a)    Cash down payment, including the Deposit as defined in paragraph 4.3 (or if an all cash transaction, the Purchase Price):
$550,500.00

(b)    Amount of "New Loan" as defined in paragraph 5.1, if any:
$4,950,500.00

(c)    Buyer shall take title to the Property subject to and/or assume the following existing deed(s) of trust ("**Existing Deed(s) of Trust**") securing the existing promissory note(s) ("**Existing Note(s)**"):
(i)    An Existing Note ("**First Note**") with an unpaid principal balance as of the Closing of approximately:
_____

Said First Note is payable at _____ per month, including interest at the rate of _____ % per annum until paid (and/or the entire unpaid balance is due on _____ ).
(ii)    An Existing Note ("**Second Note**") with an unpaid principal balance as of the Closing of approximately:
_____

Said Second Note is payable at _____ per month, including interest at the rate of _____ % per annum until paid (and/or the entire unpaid balance is due on _____ ).

(d)    Buyer shall give Seller a deed of trust ("**Purchase Money Deed of Trust**") on the property, to secure the promissory note of Buyer to Seller described in paragraph 6 ("**Purchase Money Note**") in the amount of:
$5,500,000.00

3.2    ~~If Buyer is taking title to the Property subject to, or assuming, an Existing Deed of Trust and such deed of trust permits the beneficiary to demand payment of fees including, but not limited to, points, processing fees, and appraisal fees as a condition to the transfer of the Property, Buyer agrees to pay such fees up to a maximum of 1.5% of the unpaid principal balance of the applicable Existing Note.~~

**4. Deposits.**

4.1    ☑ Buyer has delivered to Broker a check in the sum of   $100,000.00  , payable to Escrow Holder, to be delivered by Broker to Escrow Holder within 2 or _____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder or ☐ within 2 or _____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder Buyer shall deliver to Escrow Holder a check in the sum of _____ . If said check is not received by Escrow Holder within said time period then Seller may elect to unilaterally terminate this transaction by giving written notice of such election to Escrow Holder whereupon neither Party shall have any further liability to the other under this Agreement. Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer.

4.2    Additional deposits:

~~(a)    Within 5 business days after the Date of Agreement, Buyer shall deposit with Escrow Holder the additional sum of _____ to be applied to the Purchase Price at the Closing.~~

~~(b)    Within 5 business days after the contingencies discussed in paragraph 9.1 (a) through (m) are approved or waived, Buyer shall deposit with Escrow Holder the additional sum of _____ to be applied to the Purchase Price at the Closing.~~

~~(c)    If an Additional Deposit is not received by Escrow Holder within the time period provided then Seller may notify Buyer, Escrow Holder, and Brokers, in writing that, unless the Additional Deposit is received by Escrow Holder within 3 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.~~

4.3    Escrow Holder shall deposit the funds deposited with it by Buyer pursuant to paragraphs 4.1 and 4.2 (collectively the "**Deposit**"), in a State or Federally chartered bank in an interest bearing account whose term is appropriate and consistent with the timing requirements of this transaction. The interest therefrom shall accrue to the benefit of Buyer, who hereby acknowledges that there may be penalties or interest forfeitures if the applicable instrument is redeemed prior to its specified maturity. Buyer's Federal Tax Identification Number is _____ . NOTE: Such interest bearing account cannot be opened until Buyer's Federal Tax

INITIALS

INITIALS

© 2017 AIR CRE.  All Rights Reserved.

OFAL-15.01, Revised 11-01-2017

Identification Number is provided.

4.4   Notwithstanding the foregoing, within 5 days after Escrow Holder receives the monies described in paragraph 4.1 above, Escrow Holder shall release $100 of said monies to Seller as and for independent consideration for Seller's execution of this Agreement and the granting of the contingency period to Buyer as herein provided. Such independent consideration is non-refundable to Buyer but shall be credited to the Purchase Price in the event that the purchase of the Property is completed.

4.5   Upon waiver of all of Buyer's contingencies the Deposit shall become non-refundable but applicable to the Purchase Price except in the event of a Seller breach, or in the event that the Escrow is terminated pursuant to the provisions of Paragraph 9.1(n) (Destruction, Damage or Loss) or 9.1(o) (Material Change).

**5.    Financing Contingency.** *(Strike if not applicable)*

5.1   This offer is contingent upon Buyer obtaining from an insurance company, financial institution or other lender, a commitment to lend to Buyer a sum equal to at least __90__ % of the Purchase Price, on terms reasonably acceptable to Buyer. Such loan ("New Loan") shall be secured by a first deed of trust or mortgage on the Property. If this Agreement provides for Seller to carry back junior financing, then Seller shall have the right to approve the terms of the New Loan. Seller shall have 7 days from receipt of the commitment setting forth the proposed terms of the New Loan to approve or disapprove of such proposed terms. If Seller fails to notify Escrow Holder, in writing, of the disapproval within said 7 days it shall be conclusively presumed that Seller has approved the terms of the New Loan.

5.2   Buyer hereby agrees to diligently pursue obtaining the New Loan. **If Buyer shall fail to notify its Broker, Escrow Holder and Seller, in writing within** __45__ **days following the Date of Agreement, that the New Loan has not been obtained, it shall be conclusively presumed that Buyer has either obtained said New Loan or has waived this New Loan contingency.**

5.3   If, after due diligence, Buyer shall notify its Broker, Escrow Holder and Seller, in writing, within the time specified in paragraph 5.2 hereof, that Buyer has not obtained said New Loan, this Agreement shall be terminated, and Buyer shall be entitled to the prompt return of the Deposit, plus any interest earned thereon, less only Escrow Holder and Title Company cancellation fees and costs, which Buyer shall pay.

~~**6.    Seller Financing.** (Purchase Money Note). *(Strike if not applicable)*~~

~~6.1   If Seller approves Buyer's financials (see paragraph 6.5) the Purchase Money Note shall provide for interest on unpaid principal at the rate of~~
~~% per annum, with principal and interest paid as follows:          The Purchase Money Note and Purchase Money Deed of Trust shall be on the current forms commonly used by Escrow Holder, and be junior and subordinate only to the Existing Note(s) and/or the New Loan expressly called for by this Agreement.~~

~~6.2   The Purchase Money Note and/or the Purchase Money Deed of Trust shall contain provisions regarding the following (see also paragraph 10.3 (b)):~~
~~(a)   Repayment.  Principal may be prepaid in whole or in part at any time without penalty, at the option of the Buyer.~~
~~(b)   Late Charge.  A late charge of 6% shall be payable with respect to any payment of principal, interest, or other charges, not made within 10 days after it is due.~~
~~(c)   Due On Sale.  In the event the Buyer sells or transfers title to the Property or any portion thereof, then the Seller may, at Seller's option, require the entire unpaid balance of said Note to be paid in full.~~

~~6.3   If the Purchase Money Deed of Trust is to be subordinate to other financing, Escrow Holder shall, at Buyer's expense prepare and record on Seller's behalf a request for notice of default and/or sale with regard to each mortgage or deed of trust to which it will be subordinate.~~

~~6.4   WARNING: CALIFORNIA LAW DOES NOT ALLOW DEFICIENCY JUDGEMENTS ON SELLER FINANCING. IF BUYER ULTIMATELY DEFAULTS ON THE LOAN, SELLER'S SOLE REMEDY IS TO FORECLOSE ON THE PROPERTY.~~

~~6.5   Seller's obligation to provide financing is contingent upon Seller's reasonable approval of Buyer's financial condition.  Buyer to provide a current financial statement and copies of its Federal tax returns for the last 3 years to Seller within 10 days following the Date of Agreement.  Seller has 10 days following receipt of such documentation to satisfy itself with regard to Buyer's financial condition and to notify Escrow Holder as to whether or not Buyer's financial condition is acceptable.  If Seller fails to notify Escrow Holder, in writing, of the disapproval of this contingency within said time period, it shall be conclusively presumed that Seller has approved Buyer's financial condition.  If Seller is not satisfied with Buyer's financial condition or if Buyer fails to deliver the required documentation then Seller may notify Escrow Holder in writing that Seller Financing will not be available, and Buyer shall have the option, within 10 days of the receipt of such notice, to either terminate this transaction or to purchase the Property without Seller financing.  If Buyer fails to notify Escrow Holder within said time period of its election to terminate this transaction then Buyer shall be conclusively presumed to have elected to purchase the Property without Seller financing.  If Buyer elects to terminate, Buyer's Deposit shall be refunded less Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation.~~

**7.    Real Estate Brokers.**

7.1   The following real estate broker(s) ("Brokers") and brokerage relationships exist in this transaction and are consented to by the Parties (check the applicable boxes):

☑   Keller Williams Realty   represents Seller exclusively ("Seller's Broker");

☑   Magnum Properties   represents Buyer exclusively ("Buyer's Broker"); or

☐   _____   represents both Seller and Buyer ("Dual Agency").

The Parties acknowledge that other than the Brokers listed above, there are no other brokers representing the Parties or due any fees and/or commissions under this Agreement. See paragraph 24 regarding the nature of a real estate agency relationship. Buyer shall use the services of Buyer's Broker exclusively in connection with any and all negotiations and offers with respect to the Property for a period of 1 year from the date inserted for reference purposes at the top of page 1.

7.2   Buyer and Seller each represent and warrant to the other that he/she/it has had no dealings with any person, firm, broker or finder in connection with the negotiation of this Agreement and/or the consummation of the purchase and sale contemplated herein, other than the Brokers named in paragraph 7.1, and no broker or other person, firm or entity, other than said Brokers is/are entitled to any commission or finder's fee in connection with this transaction as the result of any dealings or acts of such Party. Buyer and Seller do each hereby agree to indemnify, defend, protect and hold the other harmless from and against any costs, expenses or liability for compensation, commission or charges which may be claimed by any broker, finder or other similar party, other than said named Brokers by reason of any dealings or act of the indemnifying Party.

**8.    Escrow and Closing.**

8.1   Upon acceptance hereof by Seller, this Agreement, including any counteroffers incorporated herein by the Parties, shall constitute not only the agreement of purchase and sale between Buyer and Seller, but also instructions to Escrow Holder for the consummation of the Agreement through the Escrow. Escrow Holder shall not prepare any further escrow instructions restating or amending the Agreement unless specifically so instructed by the Parties or a Broker herein. Subject to the reasonable approval of the Parties, Escrow Holder may, however, include its standard general escrow provisions. In the event that there is any conflict between the provisions of the Agreement and the provisions of any additional escrow instructions the provisions of the Agreement shall prevail as to the Parties and the Escrow Holder.

8.2   As soon as practical after the receipt of this Agreement and any relevant counteroffers, Escrow Holder shall ascertain the Date of Agreement as defined in paragraphs 1.2 and 20.2 and advise the Parties and Brokers, in writing, of the date ascertained.

8.3   Escrow Holder is hereby authorized and instructed to conduct the Escrow in accordance with this Agreement, applicable law and custom and practice of the community in which Escrow Holder is located, including any reporting requirements of the Internal Revenue Code. In the event of a conflict between the law of the state where the Property is located and the law of the state where the Escrow Holder is located, the law of the state where the Property is located shall prevail.

8.4   Subject to satisfaction of the contingencies herein described, Escrow Holder shall close this escrow (the "Closing") by recording a general warranty deed (a grant deed in California) and the other documents required to be recorded, and by disbursing the funds and documents in accordance with this Agreement.

8.5   Buyer and Seller shall each pay one-half of the Escrow Holder's charges and Seller shall pay the usual recording fees and any required documentary transfer taxes. Seller shall pay the premium for a standard coverage owner's or joint protection policy of title insurance. (See also paragraph 11)

8.6   Escrow Holder shall verify that all of Buyer's contingencies have been satisfied or waived prior to Closing. The matters contained in paragraphs 9.1 subparagraphs (b), (c), (d), (e), (g), (i), (n), and (o), 9.4, 12, 13, 14, 16, 18, 20, 21, 22, and 24 are, however, matters of agreement between the Parties only and are not instructions to Escrow Holder.

8.7   If this transaction is terminated for non-satisfaction and non-waiver of a Buyer's Contingency, as defined in paragraph 9.2, then neither of the Parties shall thereafter have any liability to the other under this Agreement, except to the extent of a breach of any affirmative covenant or warranty in this Agreement. In the event of such termination, Buyer shall, subject to the provisions of paragraph 8.10, be promptly refunded all funds deposited by Buyer with Escrow Holder, less only the $100 provided for in paragraph 4.4 and the Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation. If this transaction is terminated as a result of Seller's breach of this Agreement then Seller shall pay the Title Company and Escrow Holder cancellation fees and costs.

8.8   The Closing shall occur on the Expected Closing Date, or as soon thereafter as the Escrow is in condition for Closing; provided, however, that if the Closing does not occur by the Expected Closing Date and said Date is not extended by mutual instructions of the Parties, a Party not then in default under this Agreement may notify the other Party, Escrow Holder, and Brokers, in writing, that, unless the Closing occurs within 5 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

8.9   Except as otherwise provided herein, the termination of Escrow shall not relieve or release either Party from any obligation to pay Escrow Holder's fees and



INITIALS

© 2017 AIR CRE.  All Rights Reserved.

INITIALS

OFAL-15.01, Revised 11-01-2017

costs or constitute a waiver, release or discharge of any breach or default that has occurred in the performance of the obligations, agreements, covenants or warranties contained therein.

8.10  If this sale of the Property is not consummated for any reason other than Seller's breach or default, then at Seller's request, and as a condition to any obligation to return Buyer's deposit (see paragraph 21), Buyer shall within 5 days after written request deliver to Seller, at no charge, copies of all surveys, engineering studies, soil reports, maps, master plans, feasibility studies and other similar items prepared by or for Buyer that pertain to the Property. Provided, however, that Buyer shall not be required to deliver any such report if the written contract which Buyer entered into with the consultant who prepared such report specifically forbids the dissemination of the report to others.

**9.    Contingencies to Closing.**

9.1  The Closing of this transaction is contingent upon the satisfaction or waiver of the following contingencies. **IF BUYER FAILS TO NOTIFY ESCROW HOLDER, IN WRITING, OF THE DISAPPROVAL OF ANY OF SAID CONTINGENCIES WITHIN THE TIME SPECIFIED THEREIN, IT SHALL BE CONCLUSIVELY PRESUMED THAT BUYER HAS APPROVED SUCH ITEM, MATTER OR DOCUMENT.** Buyer's conditional approval shall constitute disapproval, unless provision is made by the Seller within the time specified therefore by the Buyer in such conditional approval or by this Agreement, whichever is later, for the satisfaction of the condition imposed by the Buyer. Escrow Holder shall promptly provide all Parties with copies of any written disapproval or conditional approval which it receives. With regard to subparagraphs (a) through (m) the pre-printed time periods shall control unless a different number of days is inserted in the spaces provided.

(a)  *Disclosure.*  Seller shall make to Buyer, through Escrow, all of the applicable disclosures required by law (See AIR CRE ("**AIR**") standard form entitled "Seller's Mandatory Disclosure Statement") and provide Buyer with a completed Property Information Sheet ("**Property Information Sheet**") concerning the Property, duly executed by or on behalf of Seller in the current form or equivalent to that published by the AIR within 10 or ____5____ days following the Date of Agreement. Buyer has 10 days from the receipt of said disclosures to approve or disapprove the matters disclosed.

(b)  *Physical Inspection.*  Buyer has 10 or ____30____ days following the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the physical aspects and size of the Property.

(c)  *Hazardous Substance Conditions Report.*  Buyer has 30 or ___***___ days following the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the environmental aspects of the Property. Seller recommends that Buyer obtain a Hazardous Substance Conditions Report concerning the Property and relevant adjoining properties. Any such report shall be paid for by Buyer. A "**Hazardous Substance**" for purposes of this Agreement is defined as any substance whose nature and/or quantity of existence, use, manufacture, disposal or effect, render it subject to Federal, state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare. A "**Hazardous Substance Condition**" for purposes of this Agreement is defined as the existence on, under or relevantly adjacent to the Property of a Hazardous Substance that would require remediation and/or removal under applicable Federal, state or local law.

(d)  *Soil Inspection.*  Buyer has 30 or ___***___ days following the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the condition of the soils on the Property. Seller recommends that Buyer obtain a soil test report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any soils report that Seller may have within 10 days following the Date of Agreement.

(e)  *Governmental Approvals.*  Buyer has 30 or ___***___ days following the Date of Agreement to satisfy itself with regard to approvals and permits from governmental agencies or departments which have or may have jurisdiction over the Property and which Buyer deems necessary or desirable in connection with its intended use of the Property, including, but not limited to, permits and approvals required with respect to zoning, planning, building and safety, fire, police, handicapped and Americans with Disabilities Act requirements, transportation and environmental matters.
NOTE: Past uses of the Property may no longer be allowed.  In the event that the Property was rezoned, it is Buyer's responsibility to obtain the rezoning from the appropriate government agencies.  Seller shall sign all documents Buyer is required to file in connection with rezoning, conditional use permits and/or other development approvals.

(f)  *Conditions of Title.*  Escrow Holder shall cause a current commitment for title insurance ("**Title Commitment**") concerning the Property issued by the Title Company, as well as legible copies of all documents referred to in the Title Commitment ("**Underlying Documents**"), and a scaled and dimensioned plot showing the location of any easements to be delivered to Buyer within 10 or ___***___ days following the Date of Agreement. Buyer has 10 days from the receipt of the Title Commitment, the Underlying Documents and the plot plan to satisfy itself with regard to the condition of title. The disapproval by Buyer of any monetary encumbrance, which by the terms of this Agreement is not to remain against the Property after the Closing, shall not be considered a failure of this contingency, as Seller shall have the obligation, at Seller's expense, to satisfy and remove such disapproved monetary encumbrance at or before the Closing.

(g)  *Survey.*  Buyer has 30 or _____ days following the receipt of the Title Commitment and Underlying Documents to satisfy itself with regard to any ALTA title supplement based upon a survey prepared to American Land Title Association ("**ALTA**") standards for an owner's policy by a licensed surveyor, showing the legal description and boundary lines of the Property, any easements of record, and any improvements, poles, structures and things located within 10 feet of either side of the Property boundary lines. Any such survey shall be prepared at Buyer's direction and expense. If Buyer has obtained a survey and approved the ALTA title supplement, Buyer may elect within the period allowed for Buyer's approval of a survey to have an ALTA extended coverage owner's form of title policy, in which event Buyer shall pay any additional premium attributable thereto.

(h)  ~~*Existing Leases and Tenancy Statements.* Seller shall within 10 or _____ days following the Date of Agreement provide both Buyer and Escrow Holder with legible copies of all leases, subleases or rental arrangements (collectively, "Existing Leases") affecting the Property, and with a tenancy statement ("Estoppel Certificate") in the latest form or equivalent to that published by the AIR, executed by Seller and/or each tenant and subtenant of the Property. Seller shall use its best efforts to have each tenant complete and execute an Estoppel Certificate. If any tenant fails or refuses to provide an Estoppel Certificate then Seller shall complete and execute an Estoppel Certificate for that tenancy. Buyer has 10 days from the receipt of said Existing Leases and Estoppel Certificates to satisfy itself with regard to the Existing Leases and any other tenancy issues.~~  Property to be delivered vacant at closing.

(i)  ~~*Owner's Association.* Seller shall within 10 or _____ days following the Date of Agreement provide Buyer with a statement and transfer package from any owner's association servicing the Property. Such transfer package shall at a minimum include: copies of the association's bylaws, articles of incorporation, current budget and financial statement. Buyer has 10 days from such documents to satisfy itself with regard to the association.~~

(j)  *Other Agreements.*  Seller shall within 10 or _____ days following the Date of Agreement provide Buyer with legible copies of all other agreements ("**Other Agreements**") known to Seller that will affect the Property after Closing.  Buyer has 10 days from the receipt of said Other Agreements to satisfy itself with regard to such Agreements.

(k)  *Financing.*  If paragraph 5 hereof dealing with a financing contingency has not been stricken, the satisfaction or waiver of such New Loan contingency.

(l)  ~~*Existing Notes.* If paragraph 3.1(c) has not been stricken, Seller shall within 10 or _____ days following the Date of Agreement provide Buyer with legible copies of the Existing Notes, Existing Deeds of Trust and related agreements (collectively, "Loan Documents") to which the Property will remain subject after the Closing. Escrow Holder shall promptly request from the holders of the Existing Notes a beneficiary statement ("Beneficiary Statement") confirming: (1) the amount of the unpaid principal balance, the current interest rate, and the date to which interest is paid, and (2) the nature and amount of any impounds held by the beneficiary in connection with such loan. Buyer has 10 or _____ days following the receipt of the Loan Documents and Beneficiary Statements to satisfy itself with regard to such financing. Buyer's obligation to close is conditioned upon Buyer being able to purchase the Property without acceleration or change in the terms of any Existing Notes or charges to Buyer except as otherwise provided in this Agreement or approved by Buyer, provided, however, Buyer shall pay the transfer fee referred to in paragraph 3.2 hereof.  Likewise if Seller is to carry back a Purchase Money Note then Seller shall within 10 or _____ days following the Date of Agreement provide Buyer with a copy of the proposed Purchase Money Note and Purchase Money Deed of Trust. Buyer has 10 or _____ days from the receipt of such documents to satisfy itself with regard  to the form and content thereof.~~

(m)  *Personal Property.*  In the event that any personal property is included in the Purchase Price, Buyer has 10 or ___***___ days following the Date of Agreement to satisfy itself with regard to the title condition of such personal property.  Seller recommends that Buyer obtain a UCC-1 report.  Any such report shall be paid for by Buyer.  Seller shall provide Buyer copies of any liens or encumbrances affecting such personal property that it is aware of within 10 or _____ days following the Date of Agreement.

(n)  *Destruction, Damage or Loss.*  Subsequent to the Date of Agreement and prior to Closing there shall not have occurred a destruction of, or damage or loss to, the Property or any portion thereof, from any cause whatsoever, which would cost more than $10,000.00 to repair or cure.  If the cost of repair or cure is $10,000.00 or less, Seller shall repair or cure the loss prior to the Closing.  Buyer shall have the option, within 10 days after receipt of written notice of a loss costing more than $10,000.00 to repair or cure, to either terminate this Agreement or to purchase the Property notwithstanding such loss, but without deduction or offset against the Purchase Price.  If the cost to repair or cure is more than $10,000.00, and Buyer does not elect to terminate this Agreement, Buyer shall be entitled to any insurance proceeds applicable to such loss.  Unless otherwise notified in writing, Escrow Holder shall assume no such destruction, damage or loss has occurred prior to Closing.

(o)  *Material Change.*  Buyer shall have 10 days following receipt of written notice of a Material Change within which to satisfy itself with regard to such change.  "**Material Change**" shall mean a substantial adverse change in the use, occupancy, tenants, title, or condition of the Property that occurs after the date of this offer and prior to the Closing.  Unless otherwise notified in writing, Escrow Holder shall assume that no Material Change has occurred prior to the Closing.

(p)  *Seller Performance.*  The delivery of all documents and the due performance by Seller of each and every undertaking and agreement to be performed


INITIALS

INITIALS

© 2017 AIR CRE.  All Rights Reserved.

OFAL-15.01, Revised 11-01-2017

by Seller under this Agreement.

(q)   *Brokerage Fee.*  Payment at the Closing of such brokerage fee as is specified in this Agreement or later written instructions to Escrow Holder executed by Seller and Brokers ("**Brokerage Fee**").  It is agreed by the Parties and Escrow Holder that Brokers are a third party beneficiary of this Agreement insofar as the Brokerage Fee is concerned, and that no change shall be made with respect to the payment of the Brokerage Fee specified in this Agreement, without the written consent of Brokers.

9.2   All of the contingencies specified in subparagraphs (a) through (m) of paragraph 9.1 are for the benefit of, and may be waived by, Buyer, and may be elsewhere herein referred to as "Buyer's Contingencies."

9.3   If any of Buyer's Contingencies or any other matter subject to Buyer's approval is disapproved as provided for herein in a timely manner ("**Disapproved Item**"), Seller shall have the right within 10 days following the receipt of notice of Buyer's disapproval to elect to cure such Disapproved Item prior to the Expected Closing Date ("**Seller's Election**"). Seller's failure to give to Buyer within such period, written notice of Seller's commitment to cure such Disapproved Item on or before the Expected Closing Date shall be conclusively presumed to be Seller's Election not to cure such Disapproved Item. If Seller elects, either by written notice or failure to give written notice, not to cure a Disapproved Item, Buyer shall have the right, within 10 days after Seller's Election to either accept title to the Property subject to such Disapproved Item, or to terminate this Agreement. Buyer's failure to notify Seller in writing of Buyer's election to accept title to the Property subject to the Disapproved Item without deduction or offset shall constitute Buyer's election to terminate this Agreement. The above time periods only apply once for each Disapproved Item. Unless expressly provided otherwise herein, Seller's right to cure shall not apply to the remediation of Hazardous Substance Conditions or to the Financing Contingency. Unless the Parties mutually instruct otherwise, if the time periods for the satisfaction of contingencies or for Seller's and Buyer's elections would expire on a date after the Expected Closing Date, the Expected Closing Date shall be deemed extended for 3 business days following the expiration of: (a) the applicable contingency period(s), (b) the period within which the Seller may elect to cure the Disapproved Item, or (c) if Seller elects not to cure, the period within which Buyer may elect to proceed with this transaction, whichever is later.

9.4   The Parties acknowledge that extensive local, state and Federal legislation establish broad liability upon owners and/or users of real property for the investigation and remediation of Hazardous Substances. The determination of the existence of a Hazardous Substance Condition and the evaluation of the impact of such a condition are highly technical and beyond the expertise of Brokers. The Parties acknowledge that they have been advised by Brokers to consult their own technical and legal experts with respect to the possible presence of Hazardous Substances on the Property or adjoining properties, and Buyer and Seller are not relying upon any investigation by or statement of Brokers with respect thereto. The Parties hereby assume all responsibility for the impact of such Hazardous Substances upon their respective interests herein.

**10.   Documents Required at or Before Closing.**

10.1   Five days prior to the Closing date Escrow Holder shall obtain an updated Title Commitment concerning the Property from the Title Company and provide copies thereof to each of the Parties.

10.2   Seller shall deliver to Escrow Holder in time for delivery to Buyer at the Closing:

(a)   Grant or general warranty deed, duly executed and in recordable form, conveying fee title to the Property to Buyer.

(b)   If applicable, the Beneficiary Statements concerning Existing Note(s).

(c)   If applicable, the Existing Leases and Other Agreements together with duly executed assignments thereof by Seller and Buyer.  The assignment of Existing Leases shall be on the most recent Assignment and Assumption of Lessor's Interest in Lease form published by the AIR or its equivalent.

(d)   If applicable, Estoppel Certificates executed by Seller and/or the tenant(s) of the Property.

(e)   An affidavit executed by Seller to the effect that Seller is not a "foreign person" within the meaning of Internal Revenue Code Section 1445 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Internal Revenue Service such sum as is required by Federal law with respect to purchases from foreign sellers.

(f)   If the Property is located in California, an affidavit executed by Seller to the effect that Seller is not a "nonresident" within the meaning of California Revenue and Tax Code Section 18662 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Franchise Tax Board such sum as is required by such statute.

(g)   If applicable, a bill of sale, duly executed, conveying title to any included personal property to Buyer.

(h)   If the Seller is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the sale of the Property.

10.3   Buyer shall deliver to Seller through Escrow:

(a)   The cash portion of the Purchase Price and such additional sums as are required of Buyer under this Agreement shall be deposited by Buyer with Escrow Holder, by federal funds wire transfer, or any other method acceptable to Escrow Holder in immediately collectable funds, no later than 2:00 P.M. on the business day prior to the Expected Closing Date provided, however, that Buyer shall not be required to deposit such monies into Escrow if at the time set for the deposit of such monies Seller is in default or has indicated that it will not perform any of its obligations hereunder. Instead, in such circumstances in order to reserve its rights to proceed Buyer need only provide Escrow with evidence establishing that the required monies were available.

(b)   If a Purchase Money Note and Purchase Money Deed of Trust are called for by this Agreement, the duly executed originals of those documents, the Purchase Money Deed of Trust being in recordable form, together with evidence of fire insurance on the improvements in the amount of the full replacement cost naming Seller as a mortgage loss payee, and a real estate tax service contract (at Buyer's expense), assuring Seller of notice of the status of payment of real property taxes during the life of the Purchase Money Note.

(c)   The Assignment and Assumption of Lessor's Interest in Lease form specified in paragraph 10.2(c) above, duly executed by Buyer.

(d)   Assumptions duly executed by Buyer of the obligations of Seller that accrue after Closing under any Other Agreements.

(e)   If applicable, a written assumption duly executed by Buyer of the loan documents with respect to Existing Notes.

(f)   If the Buyer is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the purchase of the Property.

10.4   At Closing, Escrow Holder shall cause to be issued to Buyer a standard coverage (or ALTA extended, if elected pursuant to 9.1(g)) owner's form policy of title insurance effective as of the Closing, issued by the Title Company in the full amount of the Purchase Price, insuring title to the Property vested in Buyer, subject only to the exceptions approved by Buyer. In the event there is a Purchase Money Deed of Trust in this transaction, the policy of title insurance shall be a joint protection policy insuring both Buyer and Seller.

**IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED.  A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.**

**11.   Prorations and Adjustments.**

11.1   *Taxes.*  Applicable real property taxes and special assessment bonds shall be prorated through Escrow as of the date of the Closing, based upon the latest tax bill available. The Parties agree to prorate as of the Closing any taxes assessed against the Property by supplemental bill levied by reason of events occurring prior to the Closing. Payment of the prorated amount shall be made promptly in cash upon receipt of a copy of any supplemental bill.

11.2   *Insurance.*  **WARNING:** Any insurance which Seller may have maintained will terminate on the Closing.  Buyer is advised to obtain appropriate insurance to cover the Property.

11.3   *Rentals, Interest and Expenses.*  Scheduled rentals, interest on Existing Notes, utilities, and operating expenses shall be prorated as of the date of Closing. The Parties agree to promptly adjust between themselves outside of Escrow any rents received after the Closing.

11.4   *Security Deposit.*  Security Deposits held by Seller shall be given to Buyer as a credit to the cash required of Buyer at the Closing.

11.5   *Post Closing Matters.*  Any item to be prorated that is not determined or determinable at the Closing shall be promptly adjusted by the Parties by appropriate cash payment outside of the Escrow when the amount due is determined.

11.6   *Variations in Existing Note Balances.*  In the event that Buyer is purchasing the Property subject to an Existing Deed of Trust(s), and in the event that a Beneficiary Statement as to the applicable Existing Note(s) discloses that the unpaid principal balance of such Existing Note(s) at the closing will be more or less than the amount set forth in paragraph 3.1(c) hereof ("**Existing Note Variation**"), then the Purchase Money Note(s) shall be reduced or increased by an amount equal to such Existing Note Variation. If there is to be no Purchase Money Note, the cash required at the Closing per paragraph 3.1(a) shall be reduced or increased by the amount of such Existing Note Variation.

11.7   *Variations in New Loan Balance.*  In the event Buyer is obtaining a New Loan and the amount ultimately obtained exceeds the amount set forth in paragraph 5.1, then the amount of the Purchase Money Note, if any, shall be reduced by the amount of such excess.

11.8   *Owner's Association Fees.*  Escrow Holder shall: (i) bring Seller's account with the association current and pay any delinquencies or transfer fees from Seller's proceeds, and (ii) pay any up front fees required by the association from Buyer's funds.

**12.   Representations and Warranties of Seller and Disclaimers.**

12.1   Seller's warranties and representations shall survive the Closing and delivery of the deed for a period of 3 years, and any lawsuit or action based upon them must be commenced within such time period. Seller's warranties and representations are true, material and relied upon by Buyer and Brokers in all respects. Seller hereby makes the following warranties and representations to Buyer and Brokers:

(a)   *Authority of Seller.*  Seller is the owner of the Property and/or has the full right, power and authority to sell, convey and transfer the Property to Buyer


INITIALS

INITIALS

© 2017 AIR CRE.  All Rights Reserved.                    OFAL-15.01, Revised 11-01-2017

as provided herein, and to perform Seller's obligations hereunder.

(b) *Maintenance During Escrow and Equipment Condition At Closing.* Except as otherwise provided in paragraph 9.1(n) hereof, Seller shall maintain the Property until the Closing in its present condition, ordinary wear and tear excepted.

(c) *Hazardous Substances/Storage Tanks.* Seller has no knowledge, except as otherwise disclosed to Buyer in writing, of the existence or prior existence on the Property of any Hazardous Substance, nor of the existence or prior existence of any above or below ground storage tank.

(d) *Compliance.* Seller has no knowledge of any aspect or condition of the Property which violates applicable laws, rules, regulations, codes or covenants, conditions or restrictions, or of improvements or alterations made to the Property without a permit where one was required, or of any unfulfilled order or directive of any applicable governmental agency or casualty insurance company requiring any investigation, remediation, repair, maintenance or improvement be performed on the Property.

(e) *Changes in Agreements.* Prior to the Closing, Seller will not violate or modify any Existing Lease or Other Agreement, or create any new leases or other agreements affecting the Property, without Buyer's written approval, which approval will not be unreasonably withheld.

(f) *Possessory Rights.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of the Property, except as disclosed by this Agreement or otherwise in writing to Buyer.

(g) *Mechanics' Liens.* There are no unsatisfied mechanics' or materialmens' lien rights concerning the Property.

~~(h) *Actions, Suits or Proceedings.* Seller has no knowledge of any actions, suits or proceedings pending or threatened before any commission, board, bureau, agency, arbitrator, court or tribunal that would affect the Property, or the right to occupy or utilize same.~~

(i) *Notice of Changes.* Seller will promptly notify Buyer and Brokers in writing of any Material Change (see paragraph 9.1(o)) affecting the Property that becomes known to Seller prior to the Closing.

(j) *No Tenant Bankruptcy Proceedings.* Seller has no notice or knowledge that any tenant of the Property is the subject of a bankruptcy or insolvency proceeding.

~~(k) *No Seller Bankruptcy Proceedings.* Seller is not the subject of a bankruptcy, insolvency or probate proceeding.~~

(l) *Personal Property.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of any personal property included in the Purchase Price nor knowledge of any liens or encumbrances affecting such personal property, except as disclosed by this Agreement or otherwise in writing to Buyer.

12.2 Buyer hereby acknowledges that, except as otherwise stated in this Agreement, Buyer is purchasing the Property in its existing condition and will, by the time called for herein, make or have waived all inspections of the Property Buyer believes are necessary to protect its own interest in, and its contemplated use of, the Property. The Parties acknowledge that, except as otherwise stated in this Agreement, no representations, inducements, promises, agreements, assurances, oral or written, concerning the Property, or any aspect of the occupational safety and health laws, Hazardous Substance laws, or any other act, ordinance or law, have been made by either Party or Brokers, or relied upon by either Party hereto.

12.3 In the event that Buyer learns that a Seller representation or warranty might be untrue prior to the Closing, and Buyer elects to purchase the Property anyway then, and in that event, Buyer waives any right that it may have to bring an action or proceeding against Seller or Brokers regarding said representation or warranty.

12.4 Any environmental reports, soils reports, surveys, feasibility studies, and other similar documents which were prepared by third party consultants and provided to Buyer by Seller or Seller's representatives, have been delivered as an accommodation to Buyer and without any representation or warranty as to the sufficiency, accuracy, completeness, and/or validity of said documents, all of which Buyer relies on at its own risk. Seller believes said documents to be accurate, but Buyer is advised to retain appropriate consultants to review said documents and investigate the Property.

**13. Possession.**
Possession of the Property shall be given to Buyer at the Closing subject to the rights of tenants under Existing Leases.

**14. Buyer's Entry.**
At any time during the Escrow period, Buyer, and its agents and representatives, shall have the right at reasonable times and subject to rights of tenants, to enter upon the Property for the purpose of making inspections and tests specified in this Agreement. No destructive testing shall be conducted, however, without Seller's prior approval which shall not be unreasonably withheld. Following any such entry or work, unless otherwise directed in writing by Seller, Buyer shall return the Property to the condition it was in prior to such entry or work, including the recompaction or removal of any disrupted soil or material as Seller may reasonably direct. All such inspections and tests and any other work conducted or materials furnished with respect to the Property by or for Buyer shall be paid for by Buyer as and when due and Buyer shall indemnify, defend, protect and hold harmless Seller and the Property of and from any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), damages, including those for injury to person or property, arising out of or relating to any such work or materials or the acts or omissions of Buyer, its agents or employees in connection therewith.

**15. Further Documents and Assurances.**
The Parties shall each, diligently and in good faith, undertake all actions and procedures reasonably required to place the Escrow in condition for Closing as and when required by this Agreement. The Parties agree to provide all further information, and to execute and deliver all further documents, reasonably required by Escrow Holder or the Title Company.

**16. Attorneys' Fees.**
If any Party or Broker brings an action or proceeding (including arbitration) involving the Property whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees and costs. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term "Prevailing Party" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred.

**17. Prior Agreements/Amendments.**
17.1 This Agreement supersedes any and all prior agreements between Seller and Buyer regarding the Property.
17.2 Amendments to this Agreement are effective only if made in writing and executed by Buyer and Seller.

**18. Broker's Rights.**
18.1 If this sale is not consummated due to the default of either the Buyer or Seller, the defaulting Party shall be liable to and shall pay to Brokers the Brokerage Fee that Brokers would have received had the sale been consummated. If Buyer is the defaulting party, payment of said Brokerage Fee is in addition to any obligation with respect to liquidated or other damages.
18.2 Upon the Closing, Brokers are authorized to publicize the facts of this transaction.

**19. Notices.**
19.1 Whenever any Party, Escrow Holder or Brokers herein shall desire to give or serve any notice, demand, request, approval, disapproval or other communication, each such communication shall be in writing and shall be delivered personally, by messenger, or by mail, postage prepaid, to the address set forth in this agreement or by facsimile transmission, electronic signature, digital signature, or email.
19.2 Service of any such communication shall be deemed made on the date of actual receipt if personally delivered, or transmitted by facsimile transmission, electronic signature, digital signature, or email. Any such communication sent by regular mail shall be deemed given 48 hours after the same is mailed. Communications sent by United States Express Mail or overnight courier that guarantee next day delivery shall be deemed delivered 24 hours after delivery of the same to the Postal Service or courier. If such communication is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.
19.3 Any Party or Broker hereto may from time to time, by notice in writing, designate a different address to which, or a different person or additional persons to whom, all communications are thereafter to be made.

**20. Duration of Offer.**
20.1 If this offer is not accepted by Seller on or before 5:00 P.M. according to the time standard applicable to the city of _Los Angeles_ on the date of _10/20/2018_, it shall be deemed automatically revoked.
20.2 The acceptance of this offer, or of any subsequent counteroffer hereto, that creates an agreement between the Parties as described in paragraph 1.2, shall be deemed made upon delivery to the other Party or either Broker herein of a duly executed writing unconditionally accepting the last outstanding offer or counteroffer.

**21. LIQUIDATED DAMAGES. (This Liquidated Damages paragraph is applicable only if initialed by both Parties).**
THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX, PRIOR TO SIGNING THIS AGREEMENT, THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY SELLER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT. THEREFORE, IF, AFTER THE SATISFACTION OR WAIVER



© 2017 AIR CRE. All Rights Reserved.

INITIALS

INITIALS

OFAL-15.01, Revised 11-01-2017

OF ALL CONTINGENCIES PROVIDED FOR THE BUYER'S BENEFIT, BUYER BREACHES THIS AGREEMENT, SELLER SHALL BE ENTITLED TO LIQUIDATED DAMAGES IN THE AMOUNT OF ___$100,000.00___ . UPON PAYMENT OF SAID SUM TO SELLER, BUYER SHALL BE RELEASED FROM ANY FURTHER LIABILITY TO SELLER, AND ANY ESCROW CANCELLATION FEES AND TITLE COMPANY CHARGES SHALL BE PAID BY SELLER.

_____                                              _____
Buyer's Initials                                                                        Seller's Initials

**22.   ARBITRATION OF DISPUTES.** (This Arbitration of Disputes paragraph is applicable only if initialed by both Parties.)

22.1  ANY CONTROVERSY AS TO WHETHER SELLER IS ENTITLED TO THE LIQUIDATED DAMAGES AND/OR BUYER IS ENTITLED TO THE RETURN OF DEPOSIT MONEY, SHALL BE DETERMINED BY BINDING ARBITRATION BY, AND UNDER THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("COMMERCIAL RULES"). ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED. THE NUMBER OF ARBITRATORS SHALL BE AS PROVIDED IN THE COMMERCIAL RULES AND EACH SUCH ARBITRATOR SHALL BE AN IMPARTIAL REAL ESTATE BROKER WITH AT LEAST 5 YEARS OF FULL TIME EXPERIENCE IN BOTH THE AREA WHERE THE PROPERTY IS LOCATED AND THE TYPE OF REAL ESTATE THAT IS THE SUBJECT OF THIS AGREEMENT.  THE ARBITRATOR OR ARBITRATORS SHALL BE APPOINTED UNDER THE COMMERCIAL RULES AND SHALL HEAR AND DETERMINE SAID CONTROVERSY IN ACCORDANCE WITH APPLICABLE LAW, THE INTENTION OF THE PARTIES AS EXPRESSED IN THIS AGREEMENT AND ANY AMENDMENTS THERETO, AND UPON THE EVIDENCE PRODUCED AT AN ARBITRATION HEARING. PRE-ARBITRATION DISCOVERY SHALL BE PERMITTED IN ACCORDANCE WITH THE COMMERCIAL RULES OR STATE LAW APPLICABLE TO ARBITRATION PROCEEDINGS. THE AWARD SHALL BE EXECUTED BY AT LEAST 2 OF THE 3 ARBITRATORS, BE RENDERED WITHIN 30 DAYS AFTER THE CONCLUSION OF THE HEARING, AND MAY INCLUDE ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY PER PARAGRAPH 16 HEREOF. JUDGMENT MAY BE ENTERED ON THE AWARD IN ANY COURT OF COMPETENT JURISDICTION NOTWITHSTANDING THE FAILURE OF A PARTY DULY NOTIFIED OF THE ARBITRATION HEARING TO APPEAR THEREAT.

22.2  BUYER'S RESORT TO OR PARTICIPATION IN SUCH ARBITRATION PROCEEDINGS SHALL NOT BAR SUIT IN A COURT OF COMPETENT JURISDICTION BY THE BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE UNLESS AND UNTIL THE ARBITRATION RESULTS IN AN AWARD TO THE SELLER OF LIQUIDATED DAMAGES, IN WHICH EVENT SUCH AWARD SHALL ACT AS A BAR AGAINST ANY ACTION BY BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE.

22.3  NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

_____                                              _____
Buyer's Initials                                                                        Seller's Initials

**23.   Miscellaneous.**

23.1  **Binding Effect.** Buyer and Seller both acknowledge that they have carefully read and reviewed this Agreement and each term and provision contained herein. In addition, this Agreement shall be binding on the Parties without regard to whether or not paragraphs 21 and 22 are initialed by both of the Parties. Paragraphs 21 and 22 are each incorporated into this Agreement only if initialed by both Parties at the time that the Agreement is executed.

23.2  **Applicable Law.** This Agreement shall be governed by, and paragraph 22.3 is amended to refer to, the laws of the state in which the Property is located. Any litigation or arbitration between the Parties hereto concerning this Agreement shall be initiated in the county in which the Property is located.

23.3  **Time of Essence.** Time is of the essence of this Agreement.

23.4  **Counterparts.** This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Escrow Holder, after verifying that the counterparts are identical except for the signatures, is authorized and instructed to combine the signed signature pages on one of the counterparts, which shall then constitute the Agreement.

23.5  **Waiver of Jury Trial. THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.**

23.6  **Conflict.** Any conflict between the printed provisions of this Agreement and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions. **Seller and Buyer must initial any and all handwritten provisions.**

23.7  **1031 Exchange.** Both Seller and Buyer agree to cooperate with each other in the event that either or both wish to participate in a 1031 exchange. Any party initiating an exchange shall bear all costs of such exchange. The cooperating Party shall not have any liability (special or otherwise) for damages to the exchanging Party in the event that the sale is delayed and/or that the sale otherwise fails to qualify as a 1031 exchange.

23.8  **Days.** Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days.

**24.   Disclosures Regarding The Nature of a Real Estate Agency Relationship.**

24.1  The Parties and Brokers agree that their relationship(s) shall be governed by the principles set forth in the applicable sections of the California Civil Code, as summarized in paragraph 24.2.

24.2  When entering into a discussion with a real estate agent regarding a real estate transaction, a Buyer or Seller should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction. Buyer and Seller acknowledge being advised by the Brokers in this transaction, as follows:

(a)  **Seller's Agent.** A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or subagent has the following affirmative obligations: (1) *To the Seller:* A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller. (2) *To the Buyer and the Seller:* a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(b)  **Buyer's Agent.** A Selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations. (1) *To the Buyer:* A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer. (2) *To the Buyer and the Seller:* a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(c)  **Agent Representing Both Seller and Buyer.** A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. (1) In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer: a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Seller or the Buyer. b. Other duties to the Seller and the Buyer as stated above in their respective sections (a) or (b) of this paragraph 24.2. (2) In representing both Seller and Buyer, the agent may not without the express permission of the respective Party, disclose to the other Party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered. (3) The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. Buyer and Seller should carefully read all agreements to assure that they adequately express their understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

(d)  **Further Disclosures.** Throughout this transaction Buyer and Seller may receive more than one disclosure, depending upon the number of agents assisting in the transaction. Buyer and Seller should each read its contents each time it is presented, considering the relationship between them and the real estate agent in this transaction and that disclosure. Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer representation agreement or separate document. Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties that may be of interest to this Buyer.  Brokers have no responsibility with respect to any default or breach hereof by either Party. The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this transaction may be brought against Broker more than one year after the Date of Agreement and that the liability (including court costs and attorneys' fees), of any Broker with respect to any breach of duty, error or omission relating to this Agreement shall not exceed the fee received by such Broker pursuant to this

© 2017 AIR CRE.  All Rights Reserved.

INITIALS

INITIALS

OFAL-15.01, Revised 11-01-2017

Agreement; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

24.3  *Confidential Information.* Buyer and Seller agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.

**25.  Construction of Agreement.** In construing this Agreement, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Agreement. Whenever required by the context, the singular shall include the plural and vice versa. This Agreement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.

**26.  Additional Provisions.**
Additional provisions of this offer, if any, are as follows or are attached hereto by an addendum or addenda consisting of paragraphs ___26.a___ through
___26.c___ . (If there are no additional provisions write "NONE".)

---

> **ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY AIR CRE OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AGREEMENT OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:**
>
> **1.    SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AGREEMENT.**
> **2.    RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PROPERTY. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE INTEGRITY AND CONDITION OF ANY STRUCTURES AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PROPERTY FOR BUYER'S INTENDED USE.**
>
> **WARNING: IF THE PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THIS AGREEMENT MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.**

**NOTE:**
**1.    THIS FORM IS NOT FOR USE IN CONNECTION WITH THE SALE OF RESIDENTIAL PROPERTY.**
**2.    IF EITHER PARTY IS A CORPORATION, IT IS RECOMMENDED THAT THIS AGREEMENT BE SIGNED BY TWO CORPORATE OFFICERS.**

The undersigned Buyer offers and agrees to buy the Property on the terms and conditions stated and acknowledges receipt of a copy hereof.

Date: _09/28/2018_

**BROKER**

_Magnum Properties_

Attn: _Mike Meraz_
Title: _Broker_

Address: _2222 E. Washington Blvd., Los Angeles, CA 90021_
Phone: _323 585-3000_
Fax: _323 585-3335_
Email: _magnumprop@aol.com_
Federal ID No.: _____
Broker/Agent BRE License #: _00884582_

**BUYER**

_C & M Metals, Inc. or Assignee_

By: _____
Name Printed: _Don Monroe_
Title: _President_
Phone: _323 234-2062_
Fax: _____
Email: _____

By: _____
Name Printed: _____
Title: _____
Phone: _____
Fax: _____
Email: _____

Address: _1709 E. 24th Street, Los Angeles, CA 90058_
Federal ID No.: _____

**27.  Acceptance.**
27.1  Seller accepts the foregoing offer to purchase the Property and hereby agrees to sell the Property to Buyer on the terms and therein specified.
27.2  In consideration of real estate brokerage service rendered by Brokers, Seller agrees to pay Brokers a real estate Brokerage Fee in a sum equal to _____ % of the Purchase Price to be divided between the Brokers as follows: Seller's Broker _____ % and Buyer's Broker _Two_ %. This Agreement shall serve as an irrevocable instruction to Escrow Holder to pay such Brokerage Fee to Brokers out of the proceeds accruing to the account of Seller at the Closing.
27.3  Seller acknowledges receipt of a copy hereof and authorizes Brokers to deliver a signed copy to Buyer.

**NOTE: A PROPERTY INFORMATION SHEET IS REQUIRED TO BE DELIVERED TO BUYER BY SELLER UNDER THIS AGREEMENT.**

*[handwritten: SUBJECT TO COUNTER OFFER DATED 12/13/18]*

Date: _12/13/2018_

**BROKER**

_Keller Williams Realty_

Attn: _Kirk Garabedian_
Title: _Broker_

Address: _889 Americana Way, Glendale, CA 91210_
Phone: _818 298-8810_
Fax: _818 432-3232_
Email: _kirkg@kw.com_
Federal ID No.: _____
Broker/Agent BRE License #: _01216376_

**SELLER**

_Jon Byer_

By: _____
Name Printed: _____
Title: _____
Phone: _____
Fax: _____
Email: _____

By: _____
Name Printed: _____
Title: _____
Phone: _____
Fax: _____
Email: _____



© 2017 AIR CRE. All Rights Reserved.

OFAL-15.01, Revised 11-01-2017

Address:  2203 S. Alameda Street, Los Angeles,
CA 90058
Federal ID No.: _____

AIR CRE. 500 North Brand Blvd, Suite 900, Glendale, CA 91203, Tel 213-687-8777, Email contracts@aircre.com
NOTICE:  No part of these works may be reproduced in any form without permission in writing.

LEFT INTENTIONALLY BLANK

INITIALS

© 2017 AIR CRE.  All Rights Reserved.

INITIALS

OFA L-15.01, Revised 11-01-2017

## ADDENDUM

THIS ADDENDUM (this "Addendum") is attached to and incorporated in that certain Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate (the "Agreement") dated September 28, 2018 with C & M Metals, Inc. or Assignee (Buyer)for the Property located at 1736 E. 24th Street in the city Los Angeles, State of California. The provisions of this Addendum shall control over the provisions of the form Agreement in the event of any conflict. The following provisions and/or modifications in the Agreement are incorporated.

26.a **CONTINGENCIES TO CLOSING:** From the Date of Mutual Agreement, Buyer will have time periods set forth in paragraphs 5 & 9 to waive or disapprove all contingencies or conditions that may affect its decision to purchase the Property. Seller will provide Buyer access to the Property to conduct any further studies, analysis or tests at Buyer's own cost and expense that Buyer deems necessary. Sale is subject overbid and Bankruptcy Confirmation.

26.b **AS-IS CONDITION:** Except as may otherwise expressly be provided in this Agreement, the sale of this Property(s) is being made in its "AS-IS" Condition as of the Date of Agreement. Buyer agrees that it is purchasing the Property without any representations or warranties of any kind from Seller, other than those specifically set forth in the Purchase Contract, and that Buyer is purchasing the Property in an "AS IS WHERE IS" condition and upon the basis of Buyer's own independent investigations, reports, and analysis of the Property.

26.c **DUE DILIGENCE MATERIALS:** Sellers will provide all documents, reports, studies and information in its possession that include, copies of most recent environmental reports, soil studies, survey, entitlements proposed plans, and the like to Buyer within (5) days from the Date of Agreement. In the event Buyer elects to terminate this transaction before the expiration of Buyer's contingency period all such items will be returned to Seller within (5) days after Buyer makes such election.

Buyer

Seller

# EXHIBIT B

The Debtor owns the following real property:

| Address | Description | FMV | Comments |
|---------|-------------|-----|----------|
| **"Santa Fe Ave. Property"** 8201 Santa Fe Ave. Huntington Park, CA 90255 | 9 parcels, approx. 11 acres | $22-26 million Note: Offer pending of $18.8 million. | Liens: 1.    L.A. County 2.    Hyundai  $16.8 million* 3.    Packo Investment $2,000,000 4.    BAE Family Trust $1,290,000 5.    Soo Yeong Kim $100,000 6.    Mohamed Sanfaz $500,000 7.    Toni Ko $877,500 8.    Packo Investment $100,000 |
| **"Alameda Property 1"** 2203 S. Alameda St. Los Angeles, CA 90058 | Two parcels, approx. 80,000 sq ft. | $4.8 mil approx | 1.    L.A. County 2.    Hyundai  $16.8 million* 3.    Packo Investment $2,000,000 4.    BAE Family Trust $1,290,000 5.    Soo Yeong Kim $100,000 6.    Mohamed Sanfaz $500,000 7.    Toni Ko $877,500 8.    Packo Investment $100,000 |
| **"Alameda Property 2"** 1736 E. 24th  St. Los Angeles, CA 90058 | Lot w/ building used as office. Vacant | $5.5 million | 1.    L.A. County 2.    Hyundai  $16.8 million* 3.    Packo Investment $2,000,000 4.    BAE Family Trust $1,290,000 5.    Soo Yeong Kim $100,000 6.    Mohamed Sanfaz $500,000 7.    Toni Ko $877,500 8.    Packo Investment $100,000 |
| **"Alameda Property 3"** 2445 S. Alameda St. Los Angeles, CA 90058 | 29,000 sq ft | $1.4 million | 1.    L.A. County 2.    Hyundai  $16.8 million* 3.    Packo Investment $2,000,000 4.    BAE Family Trust $1,290,000 5.    Soo Yeong Kim $100,000 6.    Mohamed Sanfaz $500,000 7.    Toni Ko $877,500 8.    Packo Investment $100,000* |
| 1770 E. 22nd  St. Los Angeles, CA 90058 | SFR - vacant | $150,000 | 1.    L.A. County 2.    Deutsche Bank $200,000 3.    Packo Investments $2,000,000 4.    Bae Family Trust $1,290,000 5.    Soo Yeong Kim $100,000 6.    Mohamed Sanfaz  $500,000 |

| | | | |
|---|---|---|---|
| | | | 7. Toni Ko $877,500 <br> 8. Packo Investment $100,000* |
| 144 & 146 S. "G" Street <br> San Bernardino, CA 92410 | 4.2 acres – 180,000 sq ft <br> 5 Parcels | $1 mil | 1. M&A $500,000 ($863,000 originally) <br> 2. Bok Soon Byun $360,000 <br> 3. Packo Investments $2,000,000 <br> 4. BAE Family Trust $1,290,000 <br> 5. Soo Yeong Kim $100,000 <br> 6. Kap Chan Chong $100,000 <br> 7. Mohamed Sanfaz $500,000 <br> 8. Packo Investments $100,000 |
| 24399 Old Highway 58, <br> Hinkley, CA 92347 | 34 acres <br> 2 Parcels | $400,000 | 1. San Bernardino County $32,492.52 <br> 2. M&A $300,000 ($462,500 originally) <br> 3. Soo Yeong Kim $100,000 |

* Note: Hyundai Steel Company asserts that it is owed more than $22 million.

The Debtor disputes that amount.

# EXHIBIT C

PRELIMINARY REPORT
YOUR REFERENCE: 18-80452-DB

Chicago Title Company
ORDER NO.: 00102133-994-LT2-JC

# EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

ALL THAT PORTION OF THE NORTHEAST 1/4 OF SECTION 9, TOWNSHIP 2 SOUTH, RANGE 13 WEST, SAN BERNARDINO BASE AND MERIDIAN, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, BOUNDED AND DESCRIBED AS FOLLOWS:

BOUNDED ON THE NORTH BY THE SOUTHERLY LINE OF EAST 24TH STREET, 40.00 FEET WIDE, AS SAME IS SHOWN ON MAP OF TRACT NO. 11300, AS PER MAP RECORDED IN BOOK 203, PAGE 32 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND ITS SOUTHEASTERLY PROLONGATION.

BOUNDED ON THE WEST BY THE EASTERLY LINE OF LONG BEACH AVENUE (EAST ROADWAY), 40.00 FEET WIDE, AS SHOWN ON SAID MAP OF TRACT NO. 11300.

BOUNDED ON THE SOUTH AND SOUTHEAST BY THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE SOUTHEASTERLY PROLONGATION OF THE SOUTHERLY LINE OF SAID EAST 24TH STREET DISTANT SOUTH 83° 22' 45" EAST 435.64 FEET ALONG SAID LINE FROM ITS INTERSECTION WITH THE EASTERLY LINE OF SAID LONG BEACH AVENUE; THENCE SOUTH 63° 47' 02" WEST 119.69 FEET TO THE BEGINNING OF A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 447.48 FEET; THENCE SOUTHWESTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 8° 23' 13" AN ARC DISTANCE OF 65.56 FEET; THENCE TANGENT TO SAID CURVE, SOUTH 72° 10' 15" WEST 121.71 FEET TO THE BEGINNING OF A TANGENT CURVE TO THE LEFT, HAVING A RADIUS OF 1157.59 FEET; THENCE SOUTHWESTERLY ALONG SAID CURVE THROUGH A CENTRAL ANGLE OF 8° 02' 29" AN ARC DISTANCE OF 162.47 FEET TO ITS INTERSECTION WITH THE AFORESAID EASTERLY LINE OF LONG BEACH AVENUE, SAID INTERSECTION BEING SOUTH 0° 29' 00" WEST 225.35 FEET MEASURED ALONG SAID EASTERLY LINE FROM ITS INTERSECTION WITH THE SOUTHERLY LINE OF EAST 24TH STREET.

EXCEPT THEREFROM ALL MINERALS AND ALL MINERAL RIGHTS OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED UNDERLYING THE PROPERTY, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, OIL AND GAS AND RIGHTS THERETO, TOGETHER WITH THE SOLE, EXCLUSIVE AND PERPETUAL RIGHT TO EXPLORE FOR, REMOVE AND DISPOSE OF SAID MINERALS BY ANY MEANS OR METHODS SUITABLE TO GRANTOR, ITS SUCCESSORS AND ASSIGNS, BUT WITHOUT ENTERING UPON OR USING THE SURFACE OF THE PROPERTY, AND IN SUCH MANNER AS NOT TO DAMAGE THE SURFACE OF THE PROPERTY, OR TO INTERFERE WITH THE USE THEREOF BY GRANTEE, HIS HEIRS OR ASSIGNS, AS RESERVED IN DEED RECORDED OCTOBER 13, 2000 AS INSTRUMENT NO. 00-1597460, OFFICIAL RECORDS.

APN: **5167-015-067**

# EXHIBIT D



# INDUSTRIAL LAND FOR SALE • 51,662± Square Feet • M3 Zone

## 1736 E 24th Street • Los Angeles • CA 90058

**BANKRUPTCY SALE**

Long Beach Ave

**SUBJECT PROPERTY**
**1.18 Acres**

E. 24th St

Measure M
Blue Zone
Property

This is a Bankruptcy Sale and Subject to Court Approval & Overbid.



*EXCLUSIVELY LISTED BY:*
**KIRK GARABEDIAN, Director**
KW Commercial
Ph. 818-588-0072
M.  818-298-8810
Email.  KirkG@kw.com
License: CA 01216376



## Executive Summary



| | |
|---|---|
| Price | $7,775,000* |
| Total Square Feet | 51,662 ± SF |
| Total Acres | 1.18 ± Acres |
| Land Price Per SF | $150* |
| Building Size | 900 ± SF |
| Zoning | M3 |
| Power | 800 Amps |
| Number of Parcels | 1 |
| Parcel Number | 5167-015-067 |
| City | Los Angeles |
| Site Address | 1736 E 24th Street |
| Current Use | Dismantling Yard |
| Delivery | Property will be delivered vacant at the close of escrow. |
| Note* | *Note, Seller may require deline-ation of purchase price for land and improvements. |

The Subject Property is an approximately 51,662 square feet (1.18 Acres) vacant land parcel located on the corner of Long Beach Avenue and East 24th Street less than 2 miles south of the Fashion District of Downtown Los Angeles.  The property is zoned M3 (Heavy Industrial) and is currently used as a recycling and storage yard.   The lot comes equipped with 800 amps of power and a large onsite transformer.

The property is located within the allowable buffer area of Los Angeles City's Commercial Cannabis Location Restriction Ordinance.  Sometimes, referenced to as the "Blue Zone", this property's range of allowable cannabis activity is further enhanced by its M3 zoning.

Currently the property is being utilized as an overflow storage yard by Central Metals, a metal recycling company, and can be vacated by the close of escrow.

**This is a Bankruptcy Sale and Subject to Court Approval & Overbid.**

We obtained the information above from sources we believe to be reliable.  However, we have not verified its accuracy and make no guarantee, warranty or representation about it.  It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal notice.  We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property.  You and your tax and  legal advisors should conduct your own investigation of the property and transaction.



## Property Attributes



### Electrical Power

3 Phase
800 AMPS
480 Volts



### Steel Fencing

Corrugated Steel Fencing
12' High



### Docks

3 Container Loading Dock



### Permits / Licenses

Business Has Already Gone through the Licensing and Permit Process for Recycling Facility.



### Weigh Station

60' Underground Scale
30' Above Ground Scale



### Heavy Industrial Zone

Property has the highest industrial zoning at M3.



### Measure M Blue Zone

Property is in the Blue zone which allows cannabis cultivation.

**This is a Bankruptcy Sale and Subject to Court Approval & Overbid.**

We obtained the information above from sources we believe to be reliable.  However, we have not verified its accuracy and make no guarantee, warranty or representation about it.  It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal notice.  We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property.  You and your tax and  legal advisors should conduct your own investigation of the property and transaction.



# Property Attributes



Weigh Scales



800 AMP Electrical Power







We obtained the information above from sources we believe to be reliable.  However, we have not verified its accuracy and make no guarantee, warranty or representation about it.  It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal notice.  We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property.  You and your tax and  legal advisors should conduct your own investigation of the property and transaction.

4

## Proposition M - Blue Zone Area



**This is a Bankruptcy Sale and Subject to Court Approval & Overbid.**

We obtained the information above from sources we believe to be reliable.  However, we have not verified its accuracy and make no guarantee, warranty or representation about it.  It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal notice.  We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property.  You and your tax and  legal advisors should conduct your own investigation of the property and transaction.

# Proposition M - Blue Zone Area

Subject Property is zoned M3 and qualifies for a wide range of Cannabis uses in accordance with the document below.

City of Los Angeles | Department of City Planning                                                                                           Page 1

## Summary of Commercial Cannabis Location Restrictions
Key to zone abbreviations on following page.

| Retail – Storefront (Type 10) | Retail – Non-storefront (Type 9) | Microbusiness (Type 12) | Indoor Cultivation (Types 1A, 1C, 2A, 3A, 4, 5A, Processor) and Level 1 Manufacturing (Type 6, N, P) | Level 2 Manufacturing (Type 7) | Distribution (Type 11) | Testing (Type 8) |
|---|---|---|---|---|---|---|
| Buffer from all sensitive sites and other on-site sales required – 700'. | Buffer from schools required – 600'. | With on-site retail: buffer from all sensitive sites and other on-site sales required – 700'. No on-site retail: buffer from schools required – 600' | Buffer from schools required – 600'. | Buffer from schools required – 600'; buffer from residential zones required – 200'. | Buffer from schools required – 600'. | Buffer from schools required – 600'. |
| Zones:<br>C1<br>C1.5<br>C2<br>C4<br>C5<br>CM<br>M1<br>M2<br>M3<br>**Specific Plan Zones:**<br>(WC) College<br>(WC) Commerce<br>(WC) Downtown<br>(WC) North Village<br>(WC) Park<br>(WC) River<br>(WC) Topanga<br>(WC) Uptown<br>RC4(CW)<br>RC5(CW)<br>C1 (CW)<br>C2 (CW)<br>C4 (CW)<br>CM (CW)<br>LASED<br>PPSP (Main Lot excluded)<br>USC-3<br>CM (GM)<br>CM (UV)<br>M (PV)<br>M2(PV)<br>UC (CA)<br>UI (CA)<br>UV (CA) | Zones:<br>C1<br>C1.5<br>C2<br>C4<br>C5<br>CM<br>M1<br>M2<br>M3<br>**Specific Plan Zones:**<br>(WC) College<br>(WC) Commerce<br>(WC) Downtown<br>(WC) North Village<br>(WC) Park<br>(WC) River<br>(WC) Topanga<br>(WC) Uptown<br>RC4(CW)<br>RC5(CW)<br>C1 (CW)<br>C2 (CW)<br>C4 (CW)<br>CM (CW)<br>LASED<br>PPSP (Main Lot excluded)<br>USC-3<br>CM (GM)<br>CM (UV)<br>M (PV)<br>M2(PV)<br>UC (CA)<br>UI (CA)<br>UV (CA) | Zones:<br>MR1 (only if no on-site retail)<br>M1<br>MR2 (only if no on-site retail)<br>M2<br>M3<br>**Specific Plan Zones:**<br>(WC) College<br>(WC) Commerce<br>(WC) Downtown<br>(WC) North Village<br>(WC) Park<br>(WC) River<br>(WC) Topanga<br>(WC) Uptown<br>M (PV)<br>M2(PV)<br>UC (CA)<br>UI (CA)<br>UV (CA) | Zones:<br>MR1<br>M1<br>MR2<br>M2<br>M3<br>**Specific Plan Zones:**<br>(WC) College<br>(WC) Commerce<br>(WC) Downtown<br>(WC) North Village<br>(WC) Park<br>(WC) River<br>(WC) Topanga<br>(WC) Uptown<br>M (PV)<br>M2(PV)<br>UC (CA)<br>UI (CA)<br>UV (CA) | Zones:<br>MR2<br>M2<br>M3<br>**Specific Plan Zones:**<br>(WC) College<br>(WC) Commerce<br>(WC) North Village<br>(WC) Park<br>(WC) River<br>(WC) Topanga<br>(WC) Uptown<br>M (PV)<br>M2(PV) | Zones:<br>MR1<br>M1<br>MR2<br>M2<br>M3<br>**Specific Plan Zones:**<br>(WC) College<br>(WC) Commerce<br>(WC) Downtown<br>(WC) North Village<br>(WC) Park<br>(WC) River<br>(WC) Topanga<br>(WC) Uptown<br>M (PV)<br>M2(PV)<br>UC (CA)<br>UI (CA)<br>UV (CA) | Zones:<br>CM<br>MR1<br>M1<br>MR2<br>M2<br>M3<br>**Specific Plan Zones:**<br>(WC) College<br>(WC) Commerce<br>(WC) Downtown<br>(WC) North Village<br>(WC) Park<br>(WC) River<br>(WC) Topanga<br>(WC) Uptown<br>CM (GM)<br>CM (UV)<br>M (PV)<br>M2(PV)<br>UC (CA)<br>UI (CA)<br>UV (CA) |

We obtained the information above from sources we believe to be reliable. However, we have not verified its accuracy and make no guarantee, warranty or representation about it. It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal notice. We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property. You and your tax and legal advisors should conduct your own investigation of the property and transaction.



## Proposition M - Blue Zone Area

Subject is in the "Blue Zone" for all relevant business functions as shown in the maps below.

### Distribution



### Indoor Cultivation & Level 1 Manufacturing



### Level 2 Manufacturing



### Microbusiness No Retail



### Retail - Non-Storefront



### Retail - Storefront



### Testing



### Microbusiness With Retail



We obtained the information above from sources we believe to be reliable. However, we have not verified its accuracy and make no guarantee, warranty or representation about it. It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal notice. We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property. You and your tax and legal advisors should conduct your own investigation of the property and transaction.



Long Beach Ave

E. 24th St

**This is a Bankruptcy Sale and Subject to Court Approval & Overbid.**

We obtained the information above from sources we believe to be reliable.  However, we have not verified its accuracy and make no guarantee, warranty or representation about it.  It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financ-
ing, or withdrawal notice.  We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property.  You and your tax and  legal advisors should conduct your own investigation of the property and transaction.



## Parcel Identification

| | |
|---|---|
| Number of Parcels | 1 |
| Parcel Number | 5167-015-067 |





**This is a Bankruptcy Sale and Subject to Court Approval & Overbid.**

We obtained the information above from sources we believe to be reliable. However, we have not verified its accuracy and make no guarantee, warranty or representation about it. It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal notice. We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property. You and your tax and legal advisors should conduct your own investigation of the property and transaction.



## Exterior Property Photos & Yard Space









**This is a Bankruptcy Sale and Subject to Court Approval & Overbid.**

We obtained the information above from sources we believe to be reliable.  However, we have not verified its accuracy and make no guarantee, warranty or representation about it.  It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal notice.  We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property.  You and your tax and  legal advisors should conduct your own investigation of the property and transaction.

10





Long Beach Ave.

E. 24th St.

This is a Bankruptcy Sale and Subject to Court Approval & Overbid.

We obtained the information above from sources we believe to be reliable. However, we have not verified its accuracy and make no guarantee, warranty or representation about it. It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal notice. We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property. You and your tax and legal advisors should conduct your own investigation of the property and transaction.

1736 E 24th Street • Los Angeles, CA 90058





**This is a Bankruptcy Sale and Subject to Court Approval & Overbid.**

We obtained the information above from sources we believe to be reliable.  However, we have not verified its accuracy and make no guarantee, warranty or representation about it.  It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal notice.  We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property.  You and your tax and  legal advisors should conduct your own investigation of the property and transaction.



## Zoning Information



Subject Property
Zoning: M3-2

**This is a Bankruptcy Sale and Subject to Court Approval & Overbid.**

We obtained the information above from sources we believe to be reliable.  However, we have not verified its accuracy and make no guarantee, warranty or representation about it.  It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal notice.  We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property.  You and your tax and  legal advisors should conduct your own investigation of the property and transaction.

13



## Location Maps





**This is a Bankruptcy Sale and Subject to Court Approval & Overbid.**

We obtained the information above from sources we believe to be reliable. However, we have not verified its accuracy and make no guarantee, warranty or representation about it. It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financ-
ing, or withdrawal notice. We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property. You and your tax and legal advisors should conduct your own investigation of the property and transaction.



## Demographics



|  | 1 Mile | 2 Miles | 3 Miles |
|---|---|---|---|
| Total Population | 22,555 | 119,848 | 325,667 |
| Population Density | 7,179 | 9,537 | 11,518 |
| Median Age | 27.3 | 28.0 | 28.7 |
| Median Age (Male) | 26.3 | 27.0 | 27.9 |
| Median Age (Female) | 28.8 | 29.0 | 29.6 |
| Total Households | 5,383 | 29,211 | 86,096 |
| # of Persons Per HH | 4.2 | 4.1 | 3.8 |
| Average HH Income | $41,149 | $38,177 | $39,996 |
| Average House Value | $381,601 | $401,564 | $389,177 |

**This is a Bankruptcy Sale and Subject to Court Approval & Overbid.**

We obtained the information above from sources we believe to be reliable.  However, we have not verified its accuracy and make no guarantee, warranty or representation about it.  It is subject to the possibility of errors, omissions, change of price, rental or other conditions, prior sale, lease or financing, or withdrawal notice.  We include projections, opinions, assumptions or estimates for example only, and they may not represent current or future performance of the property.  You and your tax and legal advisors should conduct your own investigation of the property and transaction.

# INDUSTRIAL LAND FOR SALE ◆ 51,662± Square Feet ◆ M3 Zone

## 1736 E 24th Street ◆ Los Angeles ◆ CA 90058



Measure M
Blue Zone
Property

**This is a Bankruptcy Sale and Subject to Court Approval & Overbid.**

**Exclusively Listed by:**



KIRK GARABEDIAN, Director
Ph. 818-588-0072
M.  818-298-8810
Email.  KirkG@kw.com
License: CA 01216376

# EXHIBIT E

# **Magnum** properties

Commercial and Industrial Real Estate
Sales Leasing Management

Est. 1984

January 28, 2019

Kirk Garabedian
Keller Williams Realty
889 American Way
Glendale, CA 9121

Re:      1736 E. 24th Street, Los Angeles, CA 90058
         Commerce Escrow # 18-80452-DB

Kirk,

Buyer is spending significant time and money performing the required due diligence on the property. The holidays and recent rain has interfered with the diligence process to some degree. Some of the open contingency items include but are not limited to the completion of the ALTA Survey, Phase 2 Environmental Study update, current storm water retention regulations, available electrical capacity to the property and the condition of the transformers, electrical panel and distribution systems.

**Buyer waives the following items:**

9.1(a)  Disclosures
9.1(e)  Governmental Approvals
9.1(h)  Existing Leases (property to be delivered free of any leasehold interests and personal
        property at closing)
9.1(i)  Other Agreements (provided none exist)

**Buyer request until February 20, 2019 to complete and approve the following contingencies:**

5.       Financing Contingency
9.1(b)   Physical Inspection
9.I(c)   Hazardous Substances
9.1(d)   Soil Inspection
9.I(f)   Condition of Title
9.1(g)   Survey
Other    Seller's sale price asset cost segregation document.

Member

American

Industrial

Real Estate    Please advise to the foregoing request at your earliest opportunity. Time is of the essence.

Association
               Magnum Properties

               Mike Meraz

cc: Dwayne Butler, Commerce Escrow

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **17609 Ventura Blvd., Suite 314, Encino, CA 91316.**

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION BY DEBTOR TO APPROVE THE SALE OF CERTAIN REAL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS AND ENCUMBRANCES; DECLARATIONS OF JONG UK BYUN AND KIRK GARABEDIAN; 1736 E. 24th Street, Los Angeles, CA 90018, parcel number 5167-015-067** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **2/6/2019** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **Theron S Covey**     tcovey@rasflaw.com, CAECF@tblaw.com
- **Hal D Goldflam**    hgoldflam@frandzel.com, bwilson@frandzel.com
- **M. Jonathan Hayes**    jhayes@rhmfirm.com, roksana@rhmfirm.com;rosario@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com
- **David W. Meadows**    david@davidwmeadowslaw.com
- **Katrina M Miller**    kmiller@pskfirm.com
- **Kelly L Morrison**    kelly.l.morrison@usdoj.gov
- **Daniel E Park**    dpark@parksylvalaw.com
- **Darren L Patrick**    dpatrick@omm.com
- **Steven G. Polard**    spolard@ch-law.com, cborrayo@ch-law.com
- **Valerie Smith**    claims@recoverycorp.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

**II. SERVED BY U.S. MAIL:** On **2/6/2019** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed

Hon. Vincent P. Zurzolo
U.S. Bankruptcy Court
Central District – LA Branch
255 E. Temple Street, Suite 1360
Los Angeles, CA 90012

Jong Uk Byun
8201 Santa Fe Ave.
Huntington Park, CA 90255

Debtor's Agent/Broker:
Kirk Garabedian
Keller Williams Commercial
889 Americana Way, Suite 408

Glendale, CA 91210

Buyer's Agent/Broker:
Mike Meraz, Magnum Porperties
*Representing: C&M Metals, Inc.*
2222 E. Washington Blvd.
Los Angeles, CA 90021

ALL REMAINING CREDITORS:

Allen Park -Packo
440 S. Vermont Ave., #301
Los Angeles, CA 90020

Amex
Correspondence/Bankruptcy
Po Box 981540
El Paso, TX 79998

Bae Family
440 S. Vermont Ave., #301
Los Angeles, CA 90020

Bejac
569 S. Van Buren Street
Placentia, CA 92870

Bok Sook Byun
c/o Steven Polard
1880 Century Park E, Ste 404
Los Angeles, CA 90067

California Dept of Tax and Fee Admi
Special Ops, MIC 55
PO Box 942879
Sacramento, CA 94279-0005

City of Los Angeles
Office of Finance
200 North Spring St., RM 101
Los Angeles, CA 90012

Coleman & Horowitt, LLP
499 West Shaw, Ste. 116
Fresno, CA 93704

Coleman & Horowitt, LLP
1880 Century Park East
Suite 404
Los Angeles, CA 90067

CP Construction
105 N. Loma Place
Upland, CA 91786

Creditors Adjustment

14226 Ventura Blvd.
Sherman Oaks, CA 91423

Daniel Park
3435 Wilshire Blvd., Ste 2700
Los Angeles, CA 90010

DTSC - Site Clean Up Program
P.O. Box 806
Sacramento, CA 95812

First Premier Bank
Attn: Bankruptcy
Po Box 5524
Sioux Falls, SD 57117

First Saving Bank / Blaze
Attn: Bankruptcy
Po Box 5096
Sioux Falls, SD 57117

Franchise Tax Board
Attn: Bankruptcy Unit
P.O. Box 2952
Sacramento, CA 95812-2952

Bank of Hope
c/o Frandzel Robins Bloom & Csato, L.C.
Attn: Hal D. Goldflam
1000 Wilshire Blvd., 19th Fl.
Los Angeles, CA 90017-2427

DLI Assets Bravo, LLC
c/o Katrina M. Miller
110 North Washington St., #500
Rockville, MD 20850

Genesis Bankcard Services
Po Box 4477
Beaverton, OR 97076

Hose-Man
5397 North Irwindale Ave
Irwindale, CA 91706

Hyundai Steel Company

1
c/o Taejoong Kim
10550 Talbert Ave. Fl2
Fountain Valley, CA 92708

2

Hyandai Steel Company
c/o Darren Patrick

3

O'Melveny & Meyrers LLP
400 South Hope St., 18th FL

4
Los Angeles, CA 90073

5

Internal Revenue Service
P.O. Box 7346

6
Philadelphia, PA 19101-7346

7

Jinah Oh

8
21856 S. Vermont Ave., #6
Torrance, CA 90502

9

Joan Park

10
c/o Daniel Park
3435 Wilshire Blvd.  #2700

11
Los Angeles, CA 90010

12

Kap Chan Chong
3580 Wilshire Blvd., Suite 900

13
Los Angeles, CA 90010

14

Los Angeles County Tax Collector
PO Box 54110

15
Los Angeles, CA 90054-0110

16

M & A Equities, LLC
c/o Packo Investments, Inc.

17
440 S. Vermont Ave., #301
Los Angeles, CA 90020

18

Mohamed Sanfaz

19
440 S. Vermont Ave., #301
Los Angeles, CA 90020

20

Municipal Services Bureau

21
8325 Tuscany Way, Bldg 4
Austin, TX 78754-4734

22

Ocwen Loan Servicing

23
1661 Worthington Road Ste, 100
West Palm Beach, FL 33409

24

Ocwen Loan Servicing

25
Attn: Bankruptcy Department
PO Box 24605

26
West Palm Beach, FL 33416

27

Packo Investments

28
440 S. Vermont Ave., #301
Packo In, CA 90020

Par Funding
Complete Business Solution Group
141 N. 2nd Street
Philadelphia, PA 19106

Quarter Spot Inc./DLI Assets Bravo
110 N. Washington St., Ste. 500
Rockville, MD 20850

Quantum3 Group LLC
as agent for GPCC I LLC
PO Box 788
Kirkland, WA 98083-0788

San Bernadino County Treasurer Tax
268 W. Hospitality Lane, 1st FL
San Bernardino, CA 92415

Sequoia Financial Svcs
Attn: Bankruptcy
28632 Roadside Dr , Ste 110
Agoura Hills, CA 91301

Small Business Administration
200 West Santa Ana Blvd., Ste 180
Santa Ana, CA 92701

Soo Yeong Kim
8300 Santa Fe Avenue
Huntington Park, CA 90255

Soo Yeong Kim
c/o JJ Kim & Associates PC
6 Centerpointe Dr., Suite 630
La Palma, CA 90623

Southern County Oils
1800 West Katella Ave., Suite 400
P.O. Box 4159
Orange, CA 92863

Southern County Oil Co.
1800 West Katella Ave., Suite 400
Orange, CA 92867

Stephen M. Cook
7210 Jordan Ave.
Canoga Park, CA 91303-1223

Synchrony Bank/Amazon
Attn:  Bankruptcy Dept
Po Box 965060
Orlando, FL 32896

Wells Fargo Bank

dba Wells Fargo Dealer Services

1 | Attn: Bankruptcy
Po Box 19657
2 | Irvine, CA 92623-9657

Zamucen & Curren, LLP
17898 Skypark Circle, Sutie C
Irvine, CA 92614

3 | RETURNED MAIL/REMOVED CREDITORS:

4 | Cemex Construction Materials
1430 Santa Clara Street
5 | Santa Paula, CA 93060

6 | Eisner Jaffe
9601 Wilshire Blvd., 7th FL
7 | Beverly Hills, CA 90210

8 | Prima Financial
680 Langsdorf Drive, Suite 207
9 | Fullerton, CA 92831

10 | Deutsche Bank National Trust Co
Nationstar Mortgage LLC
11 | 350 Highland Dr
Lewisville, TX 75067

12 |

Cemex Construction Materials
13 | 1430 East Santa Clara Street
Santa Paula, CA 93060

14 |

Toni Ko
15 | 1100 S. Hope Street
Los Angeles, CA 90015

16 |

Soo Yeong Kim
17 | c/o JJ Kim & Associates, PC
9252 Garden Grove Blvd., Suite 23
18 | Garden Grove, CA 92844

19 | Yeon Shim Song
c/o JJ Kim & Associates, PC
20 | 9252 Garden Grove Blvd., Suite 23
Garden Grove, CA 92844

21 |

22 | **III. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE
TRANSMISSION OR EMAIL** (indicate method for each person or entity served):
23 | Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **2/6/2019** I served the following
person(s) and/or entity(ies) by personal delivery, overnight mail service, or (for those who
consented in writing to such service method), by facsimile transmission and/or email as
24 | follows.  Listing the judge here constitutes a declaration that personal delivery on the judge
will be completed no later than 24 hours after the document is filed.

25 |

I declare under penalty of perjury under the laws of the United States of America that the
26 | foregoing is true and correct.

27 | **2/6/2019**            **Ja'Nita Fisher**            **/s/ Ja'Nita Fisher**
_____
28 | _Date_                 _Type Name_                   _Signature_